[Civ. No. 43677. First Dist., Div. Four. Apr. 11, 1979.]

RUSSELL BRUNO, Plaintiff and Respondent, v.
ROY M. BELL, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, George Deukmejian, Attorneys General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendants and Appellants.

Russell Bruno, in pro. per., for Plaintiff and Respondent.

## OPINION

**DRUMMOND, J.**\*—Defendants-appellants Roy M. Bell, as Director of Finance of the State of California and Kenneth Cory, as Controller of the State of California (defendants) appeal from that portion of a judgment which awards petitioner-appellant Russell Bruno (Bruno) $30,000 in attorney fees in conjunction with his successful prosecution of an action resulting in a declaration that Streets and Highways Code section 104.10 was invalid as in conflict with article XXVI of the California Constitution.

The primary issue is whether the trial court could have properly made an award of attorney fees upon any recognized exception to Code of Civil Procedure section 1021.

On April 29, 1975, Russell Bruno in pro. per. filed a petition for writ of mandate in superior court seeking, inter alia, a declaration that Streets and Highways Code section 104.10[1] was unconstitutional and an order requiring Roy M. Bell, as state Finance Director, to institute proceedings on behalf of the state for recovery of funds disbursed to counties and local agencies pursuant to that section.

Section 104.10 was first enacted in 1959 (Stats. 1959, ch. 2157, § 2, p. 5214), and dealt with the distribution of rental income received by the state as the result of acquisition of real property for highway purposes. The net effect of the statute was to help compensate counties for property tax revenue lost due to state acquisition of properties for future highway purposes, where the state is receiving income from those properties in the form of rental payments.[2]

---

\*Assigned by the Chairperson of the Judicial Council.

[1]All future statutory references are to the Streets and Highways Code unless otherwise specified.

[2]At the time of trial, the full text of section 104.10 read as follows:

"The Department of Finance shall, not later than the first day of November next following the close of any fiscal year after the effective date of this section, pay the rents deposited in the Highway Properties Rental Fund to the county in which such real property is situated. The Department of Public Works shall certify to the Department of Finance the amount of such rentals attributable to each county and shall notify each county of the rental and location of each piece of rental property for which rents are deposited in the fund.

"The county auditor shall distribute any payment received by . . . the county pursuant to this section, to . . . the county, to each revenue district for which the county assesses and collects real property taxes or assessments, and to every other taxing agency within the county in which the property is situated. The amount distributable to the county and each such revenue district or other taxing agency shall be proportionate to the ratio which the

On November 13, 1975, Bruno substituted the law firm of Cross, Brandt & Hays from himself; and the same day Cross associated Bruno as an attorney of record in the matter.

A hearing on summary judgment motions by both parties was held on February 16, 1977. The trial court found in favor of Bruno and against the defendants; it ruled that section 104.10 was in violation of article XXVI (now art. XIX) of the California Constitution. The court made clear that its order enjoining further distribution of the funds would be made prospectively only, as Bruno had abandoned his claim for recoupment.

On June 21, 1977, a hearing was held on Bruno's motion for attorney fees. The trial court was unsure of its power to make such an award, but deemed it an open question in light of *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal.Rptr. 683] and *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244]. However, the court awarded Bruno attorney fees in the amount of $30,000.

Defendants now appeal from only that portion of the judgment awarding attorney fees.

Was there any permissible basis for the trial court's award of attorney fees?

■ The general American rule, codified by California's Code of Civil Procedure section 1021, is that the prevailing litigant is not entitled to an award of attorney fees in the absence of statutory provision or contractual agreement.

---

amount of the taxes and assessments of each on similar real property similarly situated within that part of the county embracing the smallest in area of the revenue districts or other taxing agencies other than the county, levied for the fiscal year next preceding, bears to the combined amount of the taxes and assessments of all such districts and agencies, including the county, on such property levied for that year . . .

"Any money distributed pursuant to this section to any county, revenue district or other taxing agency shall be deposited to the credit of the same fund as any taxes or assessments on any taxable similar real property similarly situated.

"Where a county receives a payment pursuant to this section in an amount of twenty-five dollars ($25) or less in respect to any parcel of leased property, all of such payment shall be distributed to the county for deposit in the county general fund.

"As used in this section the terms 'taxing agency' and 'revenue district' have the same meanings given them in the Revenue and Taxation Code.

"The money received by the respective jurisdictions under this section may be expended by them for any proper state purpose not prohibited by the State Constitution."

At the time of trial in this case, neither a statutory provision nor express or implied contractual agreement authorizing attorney fees was present. However, California courts had recognized two exceptions to the rule against such an award, based upon the inherent equitable powers of the court: the "common fund doctrine" (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 322-323 [72 Cal.Rptr. 146]) and the "substantial benefit rule" (*Knoff* v. *City etc. of San Francisco, supra,* 1 Cal.App.3d 184, 203-204; *Mandel* v. *Hodges, supra,* 54 Cal.App.3d 596, 620-623.) In *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (hereafter referred to as *Serrano III*) the California Supreme Court gave its imprimatur to these equitable theories (*id.* at pp. 35-42) and recognized a third—the "private attorney general" concept. (*Id.,* at pp. 43-48) *Serrano III* was decided on October 4, 1977, almost two months following the instant judgment but during the pendency of this appeal. A short time later, the Legislature enacted Code of Civil Procedure section 1021.5, a loosely based codification of the "private attorney general" concept, to become effective January 1, 1978. ■ Although both *Serrano III* and Code of Civil Procedure section 1021.5 were promulgated after trial below, they are nevertheless applicable to this case. (*Kievlan* v. *Dahlberg Electronics, Inc.* (1978) 78 Cal.App.3d 951, 959 [144 Cal.Rptr. 585] (hg. den. June 15, 1978).)[3]

## 1. *The Common Fund Doctrine*

■ The oldest exception to the rule against attorney fees is the common fund doctrine. Under this theory, a litigant "who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs." (*Quinn* v. *State of California* (1975) 15 Cal.3d 162, 167 [124 Cal.Rptr. 1, 539 P.2d 761].)

This doctrine cannot be applied to the present case. As noted by *Serrano III,* all of the common fund cases have involved the creation, preservation or recovery of a certain or easily calculable sum of money out of which the fees could be paid. (20 Cal.3d at p. 35.) No such fund is present here. The outcome of this litigation will be that monies previously diverted from the state transportation fund to the highway rental

[3]In *Kievlan,* the trial court did not have the benefit of *Mandel, Serrano III* or Code of Civil Procedure section 1021.5, and denied attorney fees based upon the apparent state of the law at the time. The Court of Appeal thus decided to remand the case on this issue in light of these new developments. (78 Cal.App.3d at p. 959.) This disposition does not appear warranted in our case. Here, the trial court *awarded* attorney fees, based partially on *Mandel.* Moreover, its finding of facts regarding the basis for its award are sufficient to permit intelligent review of the ruling as a question of law.

Account for distribution to local entities will now remain within the state Transportation Fund. (See § 104.6.) No identifiable sum of money has been created, preserved or recovered—rather, an unconstitutional diversion of funds has been enjoined.

The doctrine is also inapplicable because the successful party litigant has incurred no liability for attorney fees in winning the suit. Instead, Bruno has chosen to volunteer his own time and energy as counsel in pro. per. in pursuing his action. Thus the underlying rationale of the theory—that class members who have monetarily benefitted from a representative's expenditure of attorney fees should be required to share the burden of this expense—is eliminated.

## 2. *The Substantial Benefit Rule*

This exception, which had its genesis in California within the context of corporate shareholder litigation (*Fletcher* v. *A. J. Industries, supra,* 266 Cal.App.2d 313) but which has since been applied successfully against public entities (*Mandel* v. *Hodges, supra,* 54 Cal.App.3d 596; *Card* v. *Community Redevelopment Agency* (1976) 61 Cal.App.3d 570 [131 Cal.Rptr. 153]) was the one upon which the trial court relied in making its award herein. The rule is actually an outgrowth of the "Common Fund" doctrine, but is based upon the theory that an attorney fee award is derived from the court's " 'power of equity in doing justice as between a party and the beneficiaries of his litigation' " rather than from the mere existence of a common fund. (*Fletcher, supra,* at p. 323, quoting from *Sprague* v. *Ticonic Nat. Bank* (1939) 307 U.S. 161, 166-167 [83 L.Ed. 1184, 1186-1187, 59 S.Ct. 777].) ■ Under the doctrine, an award of fees is appropriate where a litigant, proceeding in a representative capacity, obtains a decision which confers a "substantial benefit" of a pecuniary or nonpecuniary nature, upon the members of an ascertainable class. (*Serrano III, supra,* 20 Cal.3d at pp. 38-40, fn. 10.)

■ While we accept the proposition that the case at bar is one in which the court's equitable powers come into play and that the suit has been maintained as a representative action, we believe that the third requirement—the conferral of substantial benefits upon an ascertainable class—has not been met.

There is no doubt that the present action uncovered a constitutional flaw in section 104.10 and that the judgment below resulted in the cessation of the flow of money from the state's highway rental account to the county governments. However, the Supreme Court has made it

clear in *Serrano III* that benefits of a conceptual or doctrinal character are insufficient, "that to award fees on the 'substantial benefit' theory on the basis of considerations of this nature—separate and apart from any consideration of actual and concrete benefits bestowed—would be to extend that theory beyond its rational underpinnings." (20 Cal.3d at p. 42, fn. omitted.) It is difficult to perceive any *substantial* or *concrete* benefits that the instant ruling will bestow on California taxpayers. As the trial court itself observed, this is not a case where public funds have been preserved which might otherwise have gone elsewhere, but rather the net effect simply will be that "funds will be diverted from one public use to another." In this connection, the existence of an ascertainable benefitted class is illusory: While the court's injunction will add money to the coffers of the state treasury and thus indirectly benefit those who pay state taxes, it will do so at the expense of the counties and local agencies, thereby detrimentally affecting those who pay local taxes. Manifestly, both classes of taxpayers will be made up of almost precisely the same individuals.

The trial court's finding that the decision would save administrative expenses does not alter the foregoing conclusion. We cannot conclude that the mere saving of relatively minor administrative expenses associated with the disbursement of certain funds to local taxing agencies is sufficient to constitute benefits of a substantial magnitude which are required under *Serrano III.*

Both *Knoff* and *Mandel,* upon which the trial court relied, are contrasted from the instant case by the actual and concrete benefits bestowed therein. In *Knoff,* plaintiffs had secured a writ of mandate requiring the county to perform a full investigation of the loss of property taxes through the failure of the assessor's office to tax certain properties. We affirmed the trial court's order awarding attorney fees out of the additional revenue to be collected as a result of compliance with the writ. (1 Cal.App.3d 184, 203-204.) The plaintiff in *Mandel* had successfully challenged the state's practice of granting paid holiday status to Good Friday as violative of the constitutional prohibitions against establishment of religion. The award of attorney fees was affirmed on the basis of a substantial recovery of state funds formerly expended for work not performed. (54 Cal.App.3d 596, 623.)

The result of Bruno's action will simply be rediversion of some $2.5 million in rental income from the counties to the state highway fund, which, in Bruno's own words, is "already burgeoning."

We may judicially notice the fact that the counties lost an estimated $7 billion last year in property tax revenue as the result of the recent constitutional tax limitation, Proposition 13. We may further take note of the fact that the Legislature's swift response to the court's decision below was to immediately pass an urgency measure designed to eliminate section 104.10's constitutional infirmity while restoring to the counties their 24 percent allocation from the highway properties rental account. (Stats. 1978, ch. 389, approved July 11, 1978, No. 4 Deering's Adv. Legis. Service, pp. 210-213.) Under all of these circumstances, we cannot agree with the lower court that Bruno has rendered a "substantial benefit" to an ascertainable class.

### 3. The "Private Attorney General" Concept

In *Serrano III* the Supreme Court adopted the "private attorney general" theory as a basis for awarding attorney fees. · The underlying rationale of this doctrine is to encourage suits which effectuate a strong public policy interest by awarding fees to those who successfully bring suits and thereby bring about benefits to a broad class of citizens. (See 20 Cal.3d at p. 43, quoting from *D'Amico* v. *Board of Medical Examiners* (1973) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10].) Here, the "benefits" bestowed need not be of the concrete and tangible quality required under the "substantial benefits" doctrine (20 Cal.3d at p. 42), but the inquiry does not end with a finding that the litigation has vindicated some public policy having a statutory or constitutional basis. Instead the court has posited a three-pronged test for determining whether an award should be made under this theory: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision." (*Id.,* at p. 45.)

 Although the trial court did not have the opportunity to apply the private attorney general doctrine to the suit at bar, we conclude that an award of attorney fees to Bruno could not reasonably be premised upon this theory.

We agree that application of the second consideration of the three-pronged test would favor such an award: the Attorney General's office did not concede the constitutional infirmity of section 104.10 and Bruno was required to expend much time and effort in securing a declaration of its invalidity. However, consideration of the first and third factors weigh decisively against the propriety of attorney fees.

■ While allocation of a portion of rental income from property acquired with motor vehicle registration fees, weight fees and gasoline taxes to the counties for potentially nonhighway purposes establishes a technical violation of article XIX of state Constitution, *Serrano III* states explicitly that the mere vindication of a policy having constitutional stature will not be itself sufficient to support an award of fees under the private attorney general theory. (20 Cal.3d at p. 46, fn. 18.) ■ As is evident from the previous discussion, the strength or societal importance of the public policy vindicated by this decision is de minimis. Rediversion of highway property rental income from the counties and local taxing agencies back into the already burgeoning state highway fund will obviously not result in the flowing of benefits to be enjoyed by a wide number of citizens of this state. (*Serrano III, supra,* 20 Cal.3d at p. 46.) Nor can any court of this state properly make the policy determination that use of the subject funds for state purposes rather than as partial reimbursement to the counties for loss of property taxes is more "beneficial." Such a determination was the function of the Legislature— which apparently thought otherwise.

Furthermore the requirement of *Serrano III* that "the necessity of private enforcement in the circumstances [must place] upon the plaintiff *a burden out of proportion to his individual stake in the matter,*" (*id.,* at p. 46, fn. 18, italics added) is not met here: Since Bruno proceeded in pro. per. and stood to reap substantial attorney fees in the event of victory, his individual stake in the matter was far out of proportion to that of other taxpayers.

In summary, the circumstances of the litigation at bar fall far short of meeting the standards which the Supreme Court has established for justification of an award of attorney fees under the private attorney general concept.

### 4. *Code of Civil Procedure section 1021.5*

Code of Civil Procedure section 1021.5 is urged by Bruno as the final basis for affirmance of the trial court's judgment. ■ This section became effective after the judgment herein, but has been ruled applicable to cases pending on appeal. (*Woodland Hills Residents Assn.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200]; *Kievlan* v. *Dahlberg Electronics, Inc., supra,* 78 Cal.App.3d 951, 959.) The statute provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right

affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

■ We find that Bruno's action has not resulted in the "enforcement of an important right affecting the public interest." The "right" to have all highway property rental income to remain with the state highway fund, appears neither important nor necessarily in the public interest. Neither can we subscribe to Bruno's assertion that the right of highway users to have their fuel taxes, etc. used for highway purposes constitutes a "significant benefit . . . conferred on the general public." As indicated previously, it is highly unlikely that the California taxpayers, including those who use the highways, have derived any significant benefit by a rediversion of income from the counties in which they live to the state treasury. This conclusion is underscored by the fact that the instant judgment has resulted in the negation of a policy determination as to where these funds should go, made by their elected representatives in the state Legislature.

Should attorney fees be denied on grounds of public policy?

■ Commencement and maintenance of the present suit was undertaken by Bruno in pro. per. as a representative of the taxpayers of California. Bruno stands in a position unlike that of counsel in any reported California case involving an equitable award of attorney fees for his services: he purports to be representing himself as party litigant and at the same time claims entitlement to attorney fees for his services.

In *Kramer* v. *Scientific Control Corp.* (3d Cir. 1976) 534 F.2d 1085, the United States Court of Appeals held that canon 9 of the Code of Professional Responsibility[4] made it improper for an attorney to prosecute a fee-generating class action suit in which he himself was named as plaintiff and class member.

In *Gabrielson* v. *City of Long Beach* (1961) 56 Cal.2d 224 [14 Cal.Rptr. 651, 363 P.2d 883], the Supreme Court ruled that an attorney who prosecuted a taxpayer suit establishing the state's right to oil and gas revenues, not out of a desire to preserve a common fund but to establish

---

[4]"A lawyer should avoid even the appearance of impropriety." (ABA Code of Prof. Responsibility (1976) canon 9.)

his own personal adverse interests therein, should not be entitled to attorney fees. The court stated that "Litigation so motivated calls for no added incentive in the form of [attorney] fees. . . ." (*Id.*, at p. 229.)

Without questioning Bruno's integrity and assuming he acted out of the highest motives, we must nonetheless be cognizant of Ethical Consideration 9-2 of the code, which cautions that "on occasion, ethical conduct of a lawyer may appear to laymen to be unethical."

We conclude that the appearance of impropriety in this case far outweighs the benefits of rewarding an attorney for his diligence in successfully challenging an unconstitutional statute. The attorney's fee award was therefore void as against sound public policy.

The portion of the judgment appealed from is reversed with directions to enter judgment for defendants.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 8, 1979, and respondent's petition for a hearing by the Supreme Court was denied June 7, 1979. Bird, C. J., did not participate therein.