[No. B177857. Second Dist., Div. One. Feb. 17, 2005.]

APPLE COMPUTER, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LAWRENCE R. CAGNEY, Real Party in Interest.

## COUNSEL

Pillsbury Winthrop, Richard S. Ruben, Richard E. Nielsen, Kevin M. Fong and Todd G. Friedland for Petitioner.

No appearance for Respondent.

Law Offices of Allan A. Sigel, Allan A. Sigel and Christine C. Choi for Real Party in Interest.

## OPINION

**MALLANO, J.**—Plaintiff, an attorney, is the named plaintiff in this class action suit. He was represented by the law firm where he works and by a second firm that serves as cocounsel with his firm in other cases. Defendant moved to disqualify both firms based on a conflict of interest: As the class representative, plaintiff is obligated to seek the maximum recovery for the putative class, but plaintiff and the firms may have an interest in maximizing their recovery of attorney fees.

The trial court denied the disqualification motion. Defendant sought review in this court by way of a petition for a writ of mandate. We issued an order to show cause why the trial court's decision should not be reversed. The firm where plaintiff works then withdrew. The second firm did not. We conclude that the trial court abused its discretion in denying the motion to disqualify the firms because an insurmountable conflict of interest exists between the class representative and class counsel, on one hand, and the putative class, on the other hand.

I

# BACKGROUND

On January 9, 2004, plaintiff Lawrence Cagney filed this action on behalf of himself and others similarly situated, alleging that defendant Apple Computer, Inc., had collected excess sales tax from consumers in connection with a rebate program. The complaint alleges a violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). In the prayer for relief, Cagney requests attorney fees under section 1021.5 of the Code of Civil Procedure (section 1021.5.)[1] Apple estimates that if it is found liable, each consumer would be entitled to $8.00.

Cagney was represented by two law firms, Westrup Klick LLP, where he works as an attorney, and the Law Offices of Allan A. Sigel, which serves as cocounsel with Westrup Klick in a number of class actions based on the UCL.

On July 6, 2004, Apple filed a motion to disqualify both firms on the ground that their close association with Cagney would allow them to maximize attorney fees to the detriment of the putative class. In support of the motion, Apple established that from 2003 to 2004, Westrup Klick and the Sigel firm had jointly filed 10 class actions under the UCL (other than this one) in which an attorney from Westrup Klick or a relative of one of the attorneys was the named plaintiff. From 2000 to 2002, there were three such cases, including one with four named plaintiffs—three Westrup Klick attorneys and the wife of one of them.

On July 23, 2004, the firms jointly filed opposition papers to the motion to disqualify. Apple filed a reply memorandum.

By order dated August 11, 2004, the trial court denied the motion, stating, "While the Court recognizes compelling federal authority that would require disqualification on similar facts if [this case were a] federal class action[], the controlling California authority does not appear to support disqualification."

---

[1] That statute provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any . . . ." Section 1021.5 codifies the private attorney general doctrine. (See *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].)

The trial court also stated: "[T]he issues presented by [this] motion[] involve controlling questions of law as to which there are substantial grounds for difference of opinion, appellate resolution of which would be of considerable assistance to the courts and counsel handling complex class and representative actions."

On August 25, 2004, Apple filed a notice of appeal from the trial court's order (B177814).

On September 14, 2004, Apple filed a petition for a writ of mandate, challenging the same order (B177857). On September 23, 2004, we issued an order to show cause, established a briefing schedule, and calendared the matter for oral argument. We stayed Apple's appeal pending resolution of the writ petition.

On September 27, 2004—four days after we issued the order to show cause—Westrup Klick filed a notice in the trial court withdrawing as counsel for Cagney and the putative class. By letter dated October 8, 2004, Westrup Klick informed this court of its withdrawal, stating that the writ petition was moot as to it. Briefing went forward with the Sigel firm. Having read the briefs and heard oral argument, we now reach the merits of the petition.[2]

## II

## DISCUSSION

■ "We review a trial court's ruling on a disqualification motion for abuse of discretion, and we accept as correct all express or implied findings that are supported by substantial evidence. . . . 'However, the trial court's discretion is limited by the applicable legal principles. . . . Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. . . . [A] disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion.' " (*Brand v. 20th Century Ins. Co./21st Century Ins. Co.* (2004) 124 Cal.App.4th 594, 601 [21 Cal.Rptr.3d 380], citations omitted.)

■ "If the trial court denies a motion to disqualify counsel, the unsuccessful moving party can seek immediate appellate review, either by petitioning the reviewing court for a writ of mandamus, asserting that the remedy by

---

[2] By order dated June 14, 2004, another superior court case (*Poliner v. Gateway, Inc.* (Super. Ct. L.A., 2004, No. BC308923)) was deemed related to this one. The defendant in the other case, Gateway, Inc., brought a motion to disqualify Westrup Klick and the Sigel firm from representing a Westrup Klick attorney who was the named plaintiff. Gateway's motion was heard with Apple's motion, and both were denied by the same order. Neither Gateway nor the plaintiff in the other case is a party to this proceeding.

appeal is not adequate . . . or by filing a notice of appeal from the order denying disqualification. . . . [¶] . . . A petition for extraordinary relief on the merits accompanied by a request for an immediate stay is preferable, because generally extraordinary writs are determined more speedily than appeals. The specter of disqualification of counsel should not be allowed to hover over the proceedings for an extended period of time for an appeal." (*Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 455 [111 Cal.Rptr.2d 842], citation omitted.)

■ As a preliminary matter, we reject Westrup Klick's contention that its withdrawal as counsel precludes us from deciding whether its representation of Cagney gave rise to a conflict of interest. Notwithstanding the firm's withdrawal, "[w]e have discretion to decide otherwise moot cases presenting important issues that are capable of repetition yet tend to evade review." (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151].) This case raises important questions about the rights of putative class members and the conflicts of interest that may arise in representing them. And those questions may evade review if, in response to a writ petition or an order to show cause, counsel for the putative class simply withdraws from representation.[3]

## A. *Disqualification of Westrup Klick*

■ "[The] majority of courts . . . have refused to permit class attorneys, their relatives, or business associates from acting as the class representative. [¶] The most frequently cited policy justification for this line of cases arises from the possible conflict of interest resulting from the relationship of the putative class representative and the putative class attorney. Since possible recovery of the class representative is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members." (*Susman v. Lincoln American Corp.* (7th Cir. 1977) 561 F.2d 86, 90–91 (*Susman*), fns. omitted; see *id.* at p. 90, fns. 5, 6 & 7 [collecting cases].)[4]

---

[3] The parties have not raised, and we do not address, whether a cause of action under the UCL can be maintained as a class action. (See *Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 653–655, 657–663 [125 Cal.Rptr.2d 46]; *id.* at pp. 680–689 (dis. opn. of Haerle, J.).)

[4] "California courts may look to federal authority for guidance on matters involving class action procedures." (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656, fn. 7 [22 Cal.Rptr.2d 419]; accord, *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 580, fn. 8 [105 Cal.Rptr.2d 896].)

"In any class action there is always the temptation for the attorney for the class to recommend settlement on terms less favorable to his clients because a large fee is part of the bargain. The impropriety of such a position is increased where, as here, the attorney is also the representative who brought the action on behalf of the class, and where, as here, the potential recoveries by individual members, including representatives, of the class are likely to be very small in proportion to the total amount of recovery by the class as a whole. Thus, [p]laintiffs may stand to gain little as class representatives, but may gain very much as attorneys for the class." (*Graybeal v. American Savings & Loan Association* (D.D.C. 1973) 59 F.R.D. 7, 13–14.)

■ "For the same individual to attempt representation of the class as plaintiff and as counsel presents an inherent conflict of interests. Because the financial recovery for reasonable attorney's fees would dwarf the individual's recovery as a member of the class . . . , the financial interests of the named plaintiffs and of the class are not coextensive. If the interests of a class are to be fairly and adequately protected, if the courts and the public are to be free of manufactured litigation, and if proceedings are to be without cloud, the roles of class representative and of class attorney cannot be played by the same person." (*Turoff v. May Co.* (6th Cir. 1976) 531 F.2d 1357, 1360 (*Turoff*); accord, *Pope v. City of Clearwater* (M.D.Fla. 1991) 138 F.R.D. 141, 144–145.)

■ "During settlement negotiations the putative class representatives' primary duty [is] to ensure that [class counsel] [does] not sacrifice the interests of the class in order to maximize its own recovery from the instant litigation. The seriousness of the risk that [class counsel] would do so is reflected in the long line of cases which have prevented attorneys from serving as both class representatives and class counsel. [Citations.] The risk recognized by these courts and inherent in having an attorney wear the hats of both class representative and class counsel is obvious: ordinarily, class counsel stands to gain much more in fees from a settlement than any individual class member stands to gain from the settlement itself. If one attorney played both roles, he would be sorely tempted to sacrifice the interests of his fellow class members in favor of maximizing his own fees." (*In re California Micro Devices Securities Litigation* (N.D.Cal. 1996) 168 F.R.D. 257, 262 (*California Micro Devices*).)

■ "[Class] litigation . . . must be monitored by an informed and independent plaintiff and simply cannot be left for the lawyers to manage. The court concludes that when putative class counsel are not monitored by an independent and informed client and when that counsel has taken significant action in the case without court oversight or approval, the only adequate class representative . . . is a class member who *is* well-informed about the action

and independent of its counsel." (*California Micro Devices, supra,* 168 F.R.D. at p. 275.)

In *Kramer v. Scientific Control Corp.* (3d Cir. 1976) 534 F.2d 1085 (*Kramer*), the court was presented with the question: "May a member of the bar who is a plaintiff class representative in a class action . . . designate as his counsel a member or employee of his law firm?" (*Id.* at p. 1086.) Answering that question in the negative, and concluding that counsel should be disqualified, the Third Circuit Court of Appeals explained: "The very nature of this litigation[,] a . . . class action for money damages[,] suggests the possibility that success, either by verdict and judgment or by settlement, would result also in a court-awarded attorneys' fee from the fund created for the benefit of the class. . . . [C]ourts have long recognized 'the historic power of equity to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit.' " (*Id.* at p. 1089.)

"[A] class action is a special type of legal proceeding. Our inquiry becomes necessary only because an attorneys' fee may emanate from an equitable fund, creating a possible conflict between the interests of the plaintiff class members represented by [the class representative, who is an attorney,] and the interest of [the representative's law firm] in maximizing [its] award as attorney for the class." (*Kramer, supra,* 534 F.2d at p. 1091, fn. omitted.)

■ "[W]e cannot agree that an appearance of an improper conflict of interest inherent in one partner's dual role as class representative and as class counsel vanishes when his partner is substituted as class counsel. To argue [otherwise] is to argue against reality, against the vagaries of human nature, and against widely-held public impressions of the legal profession. Thus, if one concludes, as we do, that an appearance of impropriety, at a minimum, ensues when an attorney class representative also serves as counsel for a class that may benefit from an equitable fund, substituting a partner as counsel will not suffice as an antidote. . . . What we have said concerning substitution of a partner of the attorney-class representative applies equally to substitution of an attorney-employee or office associate as counsel." (*Kramer, supra,* 534 F.2d at p. 1092.)

■ "We have concluded that . . . no member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a . . . class action may serve as counsel to the class if the action might result in the creation of a fund from which an attorneys' fee award would be appropriate." (*Kramer,*

*supra*, 534 F.2d at p. 1093; see *Serrano v. Priest* (1977) 20 Cal.3d 25, 35–38, & fn. 5 [141 Cal.Rptr. 315, 569 P.2d 1303] [discussing common fund doctrine].)

And in *Bruno v. Bell* (1979) 91 Cal.App.3d 776 [154 Cal.Rptr. 435], the plaintiff, an attorney, prevailed in challenging a state statute on constitutional grounds and sought an award of attorney fees under section 1021.5. The trial court awarded him $30,000 in fees, but the Court of Appeal reversed, stating: "Commencement and maintenance of the present suit was undertaken by [plaintiff] in pro. per. as a representative of the taxpayers of California. [Plaintiff] stands in a position unlike that of counsel in any reported California case involving an equitable award of attorney fees for his services: he purports to be representing himself as party litigant and at the same time claims entitlement to attorney fees for his services.

"In *Kramer*[, *supra*,] 534 F.2d 1085, the United States Court of Appeals held that . . . it [was] improper for an attorney to prosecute a fee-generating class action suit in which he himself was named as plaintiff . . . . [¶] . . .

"Without questioning [plaintiff's] integrity and assuming he acted out of the highest motives, we must nonetheless be cognizant . . . that 'on occasion, ethical conduct of a lawyer may appear to laymen to be unethical.'

"We conclude that the appearance of impropriety in this case far outweighs the benefits of rewarding an attorney for his diligence in successfully challenging an unconstitutional statute. The attorney's fee award was therefore void as against sound public policy." (*Bruno v. Bell*, *supra*, 91 Cal.App.3d at pp. 787–788, fn. omitted.)

■ Cagney attempts to distinguish the foregoing cases on two grounds. First, he asserts that the courts in *Susman*, *Turoff*, and *California Micro Devices* addressed conflicts of interest in deciding whether to certify a class, not whether to disqualify counsel. But conflicts that preclude class certification may also support disqualification. Courts have held that disqualification is required where class counsel serves as the class representative or where a familial relationship exists between class counsel and the class representative. (See, e.g., *Petrovic v. Amoco Oil Co.* (8th Cir. 1999) 200 F.3d 1140, 1155–1156 (*Petrovic*); *Lowenschuss v. Bluhdorn* (2d Cir. 1980) 613 F.2d 18, 20 (*Lowenschuss*); *Zylstra v. Safeway Stores, Inc.* (5th Cir. 1978) 578 F.2d 102, 103–104 (*Zylstra*); *Kramer*, *supra*, 534 F.2d 1085; *Barliant v. Follett Corp.* 74 Ill.2d 226 [384 N.E.2d 316, 321–322, 23 Ill.Dec. 522] (*Barliant*).)

Second, Cagney seizes on *Kramer*'s references to a "fund" and argues that *Kramer* is limited to cases where attorney fees would be paid out of a common fund, as opposed to direct payment by the defendant under a fee-shifting statute like section 1021.5. But *Kramer* has been followed in numerous cases without mention of a common fund. (See, e.g., *Lowenschuss, supra*, 613 F.2d at p. 20; *Zylstra, supra*, 578 F.2d at pp. 103–104; *Simms v. Exeter Architectural Products, Inc.* (M.D.Pa. 1994) 868 F.Supp. 668, 677; *Barliant, supra*, 384 N.E.2d at pp. 321–322; *Gocial v. Independence Blue Cross* (2003) 2003 PASuper 242 [827 A.2d 1216, 1221].) And in *Bruno v. Bell, supra*, 91 Cal.App.3d 776, the Court of Appeal followed *Kramer* in applying section 1021.5—the very statute upon which Cagney would rely in seeking attorney fees. (See *Bruno v. Bell, supra*, 91 Cal.App.3d at p. 787.)

■ Further, disqualification under *Kramer* and similar cases is based in part on one of the prerequisites of a class action: The class representative shall " 'fairly and adequately protect the interests of the class.' " (*Kramer, supra*, 534 F.2d at p. 1088; see *Susman, supra*, 561 F.2d at pp. 95–96; *Turoff, supra*, 531 F.2d at p. 1360; *California Micro Devices, supra*, 168 F.R.D. at pp. 274–275.) That requires the class representative to "monitor the conduct of class counsel *throughout the litigation.*" (*Armour v. Network Associates, Inc.* (N.D.Cal. 2001) 171 F.Supp.2d 1044, 1048, italics added; accord, *Scott v. New York City Carpenters Pension Plan* (S.D.N.Y. 2004) 224 F.R.D. 353, 355–356.)

But whether attorney fees *will be* paid out of a common fund—if the class ultimately prevails—may not be ascertainable when a motion to disqualify counsel is brought or, for that matter, until the case is finally resolved by settlement or otherwise.[5] Under Cagney's theory, then, disqualification would be based on a factor—the eventual source of attorney fees—that may be largely unknown at the time disqualification is sought. (See, e.g., *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 628 [98 Cal.Rptr.2d 388] ["the fee-shifting nature of this settlement agreement arose quite late in the game in this litigation's history"].) A better safeguard for protecting the interests of the putative class is the *ongoing* supervision of an independent class representative.

---

[5] In some cases, a common fund may exist, but the court may nevertheless award fees under section 1021.5. (See *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1413–1417 [1 Cal.Rptr.2d 459].) In other cases, the class may seek fees under section 1021.5, but the court may conclude that the common fund doctrine is applicable. (See *Rider v. County of San Diego* (1992) 11 Cal.App.4th 1410, 1416, 1422–1424 [14 Cal.Rptr.2d 885].) And some fee awards may be based on principles derived from *both* the common fund doctrine and case law involving fee-shifting statutes. (See *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 26–50 [97 Cal.Rptr.2d 797] (*Lealao*).) Thus, there are cases that "cannot be conveniently categorized with either the statutory fee-shifting cases or the common-fund . . . cases." (*Estate of Trynin* (1989) 49 Cal.3d 868, 877 [264 Cal.Rptr. 93, 782 P.2d 232].)

In addition, given the possibility that any class action may settle, it should not matter whether attorney fees are paid out of a common fund or by the defendant directly under section 1021.5. " 'Although under the terms of [a] settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.' " (*Lealao, supra,* 82 Cal.App.4th at p. 33.)

"[T]he size of the class recovery [is] influenced by and therefore related to the size of the fee even though the fee [is] paid directly by the defendant and not out of the class recovery . . . . '. . . "[A] defendant is interested only in disposing of the total claim asserted against it; . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." ' " (*Lealao, supra,* 82 Cal.App.4th at p. 34.)

"Even where . . . the parties do not specifically agree to the amount of attorney fees, the defendant usually has a fairly good idea of the range of fees that will be sought and the approximate amount likely to be awarded. The value of the benefit a settling defendant is willing to confer on the class—either through the establishment of a separate fund or in some other way—will therefore invariably be influenced by the amount of fees it *would* be obliged, or estimates it *would* be obliged, to pay class counsel *if it did so directly.*" (*Lealao, supra,* 82 Cal.App.4th at p. 37.)

"It is well settled that the parties to a lawsuit may negotiate a settlement according to which the defendant makes a lump-sum payment embracing both monetary relief to the plaintiff and attorney's fees liability . . . . The device of a lump-sum settlement is normally used in class action cases governed by a fee-shifting statute which, if the plaintiffs were to prevail at trial, might permit them to obtain substantial fees directly from the defendant in addition to the amount of any judgment." (*Bowen v. SouthTrust Bank of Alabama* (M.D.Ala. 1991) 760 F.Supp. 889, 892–893.)

In short, the prohibition against dual roles—serving as class counsel and class representative—is not limited to common fund cases. The common fund doctrine, like section 1021.5 itself, is simply an exception to the "American rule," which provides that parties to a lawsuit must ordinarily pay their own attorney fees. (See *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 633–634 [71 Cal.Rptr.2d 632] & fn. 3.) Under both exceptions, class counsel is entitled to the same thing: "reasonable" attorney

fees. (See *Garabedian v. Los Angeles Cellular Telephone Co.* (2004) 118 Cal.App.4th 123, 127–128, 129 [12 Cal.Rptr.3d 737] [common fund]; *Graham v. DaimlerChrysler Corp.*, *supra*, 34 Cal.4th at pp. 578–584 [section 1021.5].)

■ And although attorney fees awarded under the common fund doctrine are based on a "percentage-of-the-benefit" analysis, while those under a fee-shifting statute are determined using the lodestar method, "[t]he ultimate goal . . . is the award of a 'reasonable' fee to compensate counsel for their efforts, irrespective of the method of calculation." (*Brytus v. Spang & Co.* (3d Cir. 2000) 203 F.3d 238, 247; see *Lealao*, *supra*, 82 Cal.App.4th at pp. 26–50 [discussing determination of attorney fees under common fund doctrine and fee-shifting statutes]; *id.* at pp. 45–50 [trial court may use amount of attorney fees awardable under common fund doctrine to "cross-check" amount of fees awarded under fee-shifting statute]; *Ramos v. Countrywide Home Loans, Inc.*, *supra*, 82 Cal.App.4th at p. 628 [same].)

Cagney's effort to limit disqualification to common fund cases is not entirely without support. In *Phillips v. Joint Legislative Com., etc.* (5th Cir. 1981) 637 F.2d 1014 (*Phillips*), the court, in ordering that a class be certified, stated: "This Court has adopted a per se rule . . . that an attorney who is the partner or spouse of a named class representative is disqualified from acting as counsel for the class. . . . [¶] . . . [This] rule is directed at a particular ethical problem: the potential conflict that arises when a class representative stands (or appears to stand) to gain financially from an award of attorney's fees made out of a class fund. Put simply, the cause for concern is that the class representative may be too generous with the class's money in granting a fee to his own partner or spouse. . . . Here the problem does not arise. Any attorney's fee granted in these cases will come directly from the defendants under [a federal statute], and not from any fund created for class relief; hence, [the named plaintiff] would never have the opportunity for overgenerosity." (*Id.* at pp. 1023–1024, fn. omitted.)

But *Phillips* has, for good reason, been limited to its facts. As stated by the Eleventh Circuit Court of Appeals in affirming the denial of a motion to certify a class: "[I]n *Phillips v. Joint Legislative Com., etc.*[, *supra*,] 637 F.2d 1014 [], [the court] upheld class certification where one of the three named plaintiffs was an attorney with the firm serving as class counsel. The court addressed itself to the narrow issue of whether the class representative may be too generous with the class's money in granting a fee to his own partner or spouse. The *Phillips* court stressed that this problem did not arise in its case,

because any attorney's fees granted would come directly from the defendants under [a federal statute], and not from any fund created for class relief.

"*Phillips* is distinguishable from the present case. First, *Phillips* is a civil rights case, not [an action under the federal Truth in Lending Act (TILA)]. Throughout our legal history, a shortage has existed of plaintiffs willing and available to file civil rights class actions. The courts are thus, quite rightly, hesitant to deny class certification in civil rights cases. Though the legislative history of [the] TILA does indicate a desire to promote class actions, a TILA suit is clearly distinguishable from a civil rights action.

"Second, in accordance with *Phillips,* we recognize that no opportunity exists for [the named plaintiff in this case] to be too generous with the class's money, for the main reason that the court, in TILA cases, awards attorney's fees. We are, however, concerned with the fact that where a named representative is also an employee of class counsel, that named representative may be more concerned with maximizing the return and with satisfying the needs of class counsel than he is with the needs of other class members. In *answering questions of when to settle and how much to settle for*, a named representative who is an employee of class counsel may arrive at answers which benefit not the class, but the class counsel." (*Shroder v. Suburban Coastal Corp.* (11th Cir. 1984) 729 F.2d 1371, 1375–1376, italics added.)

Similarly, in *Susman, supra,* 561 F.2d 86, the Seventh Circuit Court of Appeals discussed the requirement that the class representative " 'fairly and adequately protect the interests of the class.' " (*Id.* at p. 87, fn. 2, quoting Fed. Rules Civ.Proc., rule 23(a)(4).)[6] The court stated: "We do not accept . . . [the] argument that reliance on *the court's control of settlement and attorney's fees* renders strict enforcement of the [fair and adequate representation] requirement[] . . . unnecessary. Nor do we . . . agree . . . that a realistic approach to ensuring protection of absent class members' interests places principal reliance on *class counsel and the court.* [The law] require[s] that *representative parties* adequately protect the interests of absent class members. The *entire process of adjudication* which is comprised of the class representative, class counsel, and the trial judge must ensure adequacy of representation." (*Susman, supra,* 561 F.2d at pp. 95–96, italics added.) An informed and independent class representative is necessary to monitor class counsel at every stage of the litigation. (See *California Micro Devices, supra,* 168 F.R.D. at pp. 269–270, 274–275; *Armour v. Network Associates, Inc., supra,* 171 F.Supp.2d at p. 1048.)

---

[6] The same requirement exists under California law. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

■ *Phillips* should not be applied here for another reason: It fails to take into account that class actions, like other civil suits, often settle, and the parties reach some form of agreement as to attorney fees. (See Cohelan on California Class Actions (2004 ed.) § 9:1, p. 279; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶¶ 14:140.5, 14:140.6, p. 14-71.) The settlement of a class action, including a recovery of attorney fees, requires court approval regardless of whether a class has been certified. (See *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800–1801 [56 Cal.Rptr.2d 483] (*Dunk*); Cal. Rules of Court, rules 1859, 1860.) The test used by courts in evaluating the reasonableness of a settlement—" ' "an amalgam of delicate balancing, gross approximations and rough justice" ' " (*Dunk,* at p. 1801)—requires that the trial court have unbiased input that only an independent class representative can provide.

■ Thus, the oversight provided by the court *at the time of settlement* is in addition to, not in lieu of, the participation and supervision that an independent class representative should provide *from start to finish.* Both levels of scrutiny are necessary to protect the interests of the putative class. "[J]udicial oversight is not a realistic substitute for enforcement of the fair and adequate representation requirement." (*Cohen v. Bloch* (S.D.N.Y. 1980) 507 F.Supp. 321, 325.) And "the court's task of overseeing the . . . merits of a settlement or compromise of a suit is greatly facilitated by knowing that the procedures designed to assure adequate representation are carefully followed." (*Kirby v. Cullinet Software, Inc.* (D.Mass. 1987) 116 F.R.D. 303, 310.)

■ As stated in a leading California treatise: "An attorney generally may not serve as both class representative and counsel for the class. The concern is that there would be an irreconcilable conflict of interest because the attorney might stand to gain much more in fees than any class member's individual recovery." (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2004) ¶ 4:157.24, p. 4-56.5.)

■ A prominent treatise on federal law has noted: "[T]he substantial attorney fees that may be awarded [in some class actions] may mean that at some point—in particular when settlement discussions take place—the attorneys' interests and those of the class will conflict. In order to minimize the potential for this problem and to ensure that there is someone concerned only with the class members' interests throughout the litigation, several courts have ruled that the class attorney cannot be the named representative . . . . In this way the representative can watch out for the interests of the class should

the attorney be blinded by more selfish motives." (7A Wright et al., Federal Practice and Procedure (2d ed. 1986) § 1769.1, pp. 385–387, fn. omitted.)

Nevertheless, Cagney denies the existence of a conflict, contending that, under California law, "an appearance of impropriety by itself does not support a lawyer's disqualification. . . . ' "*Speculative* contentions of conflict of interest cannot justify disqualification of counsel." ' " (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 833 [115 Cal.Rptr.2d 847], italics added.) " 'Canon 9 of the American Bar Association Model Code of Professional Responsibility (hereinafter Canon 9) provides that: "A lawyer should avoid even the appearance of professional impropriety." ' . . . 'California has not adopted Canon 9, either in the Rules of Professional Conduct of the State Bar of California or in the Business and Professions Code . . . . [But] the ABA Code still "serves to guide California courts" . . . , which have adverted to Canon 9 or the appearance of impropriety standard in a variety of contexts . . . .' . . . [¶] . . . [¶]

". . . 'Despite the many references to the appearances standard in our case law, and despite occasional judicial statements that "[d]isqualification is proper . . . to avoid any appearance of impropriety" . . . , there is no California case in which an attorney has been disqualified *solely* on this basis. Invariably, Canon 9 has been relied upon to disqualify counsel only where the appearance of impropriety arises in connection with a tangible dereliction.' " (*Hetos Investments, Ltd. v. Kurtin* (2003) 110 Cal.App.4th 36, 47 [1 Cal.Rptr.3d 472], citations omitted.)

■ Here, we are dealing with more than speculative conflicts and the appearance of impropriety: Cagney and Westrup Klick have placed themselves in a position of *divided loyalties*—their own financial interest in recovering attorney fees versus their obligation to the putative class to maximize the recovery of monetary and other relief. This is grounds to disqualify Westrup Klick. (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 [36 Cal.Rptr.2d 537, 885 P.2d 950] [attorney properly disqualified where unable to give client undivided loyalty]; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144–1147 [86 Cal.Rptr.2d 816, 980 P.2d 371] [same]; *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 11–13 [60 Cal.Rptr.2d 207] [same].)

■ As stated by the Eighth Circuit Court of Appeals in affirming the disqualification of class counsel whose husband was a class representative: "The lack of a prohibition on the 'appearance of impropriety' in the Rules of

Professional Conduct does not 'alter the underlying principle that an attorney owes *undivided loyalty* to the client.' " (*Petrovic, supra,* 200 F.3d at p. 1155, italics added.)[7]

It follows that the trial court erred in denying Apple's motion to disqualify Westrup Klick from representing Cagney, as the class representative, and the putative class.[8]

## B. *Disqualification of the Sigel Firm*

Cagney's other counsel, the Sigel firm, must be disqualified—even though Cagney does not work there—because of the close business connection between Cagney, Westrup Klick, and the Sigel firm.

In *Hale v. Citibank, N.A.* (S.D.N.Y 2001) 198 F.R.D. 606, the court denied a motion to certify a class brought by plaintiff Andrea Hale because her husband, Harley Schnall, an attorney, had referred at least seven other cases to the firm representing her, Heller, Horowitz & Feit. The plaintiffs in the other cases included Hale, Schnall, and Schnall's mother and father. Schnall had also assisted the Heller firm by reviewing pleadings and briefs prepared by the firm. Schnall and the Heller firm "ha[d] an 'expectation' that 'when these cases [were] resolved and if they[] settled substantially in favor of the plaintiff[s], . . . [Schnall] might be recognized for [his] contribution to the cases.' " (*Id.* at p. 607.)

In denying the certification motion, the court stated: "Whether these problematic arrangements violate New York State law or ethics is not before this Court. Whether lawful or not, however, they will inevitably cause Hale to confuse her fiduciary duty to the prospective class with her interest in protecting and advancing her husband's contingent *financial relationship* with the Heller firm, which in turn is related to a host of extraneous considerations, including the conduct of other cases. Given the numerous respects in which such interests could conflict, Hale cannot be relied on to fairly and adequately represent the proposed class." (*Hale v. Citibank, N.A., supra,* 198 F.R.D. at p. 607, italics added.)

---

[7] Assuming that this type of conflict could be waived by a client (see *Flatt v. Superior Court, supra,* 9 Cal.4th at p. 285, fn. 4), a waiver is not possible in this case. "Unidentified class members cannot waive a potential conflict of interest." (*Cal Pak Delivery, Inc. v. United Parcel Service, Inc., supra,* 52 Cal.App.4th at p. 12.)

[8] Apple did not seek to prevent Westrup Klick from representing Cagney in his individual capacity. Nothing we have said should be taken otherwise.

In *Jaroslawicz v. Safety Kleen Corp.* (N.D.Ill. 1993) 151 F.R.D. 324 (*Jaroslawicz*), the court declined to certify a class where a close business relationship existed between the named plaintiff, David Jaroslawicz, an attorney, and the law firm that represented him, Pomerantz Levy, even though Jaroslawicz did not work there. As the court explained: "[D]efendants point to the fact that Jaroslawicz has been represented by the Pomerantz firm in previous class actions and has served as co-counsel in at least 42 other cases, including 25 currently pending cases. . . . Defendants contend that the relationship between Jaroslawicz and Pomerantz Levy amounts to a 'de facto partnership,' as evidenced by the fact that Jaroslawicz receives his compensation directly from Pomerantz Levy, and not the court, for cases in which he and Pomerantz Levy were co-counsel. . . .

"Defendants further assert that Jaroslawicz's interest in the goodwill of Pomerantz Levy creates a conflict of interest which disqualifies Jaroslawicz from serving as class representative. Thus far, Jaroslawicz has received at least $167,929 in attorneys fees from the 17 cases in which he has been co-counsel with Pomerantz Levy. . . . Jaroslawicz's share of the attorney's fees are not apportioned by the court; rather, Jaroslawicz receives compensation for his work directly from Pomerantz Levy. . . . Defendants argue that Jaroslawicz's future earnings create an impermissible conflict because of 'the fact that [Jaroslawicz's] cut of the attorney's fees in [the 25 currently pending cases where Jaroslawicz and Pomerantz Levy are currently co-counsel] . . . will tempt him . . . to put his counsel's interests ahead of those in the class.' . . .

"In response, Jaroslawicz contends that '[he] is neither a partner nor a relative of class counsel in this action, and he will not share in any fee award that class counsel may earn from their representation of the class. Thus, there is no "relationship" between Mr. Jaroslawicz and class counsel that would restrict his service as a class representative.' . . . Jaroslawicz characterizes his relationship with Pomerantz Levy as 'members of the bar who from time to time refer cases to one another and serve as co-counsel.' . . . [¶] . . . [A] court may find a conflict of interest based on the relationship between the class representative and class counsel even though the class representative will not share in attorney's fees from that case." (*Jaroslawicz, supra,* 151 F.R.D. at pp. 328–329.)

"[T]hat Jaroslawicz is not in name a partner, relative or employee of Pomerantz Levy does not preclude a finding that Jaroslawicz is an inadequate class representative. . . . Contrary to plaintiff's characterization of the relationship between himself and Pomerantz Levy, we find that serving as co-counsel on 25 pending cases describes an '*interdependent*' relationship." (*Jaroslawicz, supra,* 151 F.R.D. at p. 329, italics added.)

"As a plaintiff in the present case, Jaroslawicz's maximum recovery is less than $100. Jaroslawicz asserts that his lengthy *prior* history with Pomerantz Levy is irrelevant to the decision on adequacy of representation. He does not, however, address his *present* relationship with Pomerantz Levy. Unlike the other class members, Jaroslawicz has a significant financial interest in maintaining the goodwill of Pomerantz Levy. As a result, the financial interests of Jaroslawicz and the class members are not co-extensive, and . . . Jaroslawicz's ability to fairly and adequately protect the class comes into question. . . . [¶] We are thus persuaded by defendants' arguments, and we find that Jaroslawicz is not an adequate class representative. Jaroslawicz's possible recovery as a plaintiff is dwarfed by the fees that Pomerantz Levy could recover in the action." (*Jaroslawicz, supra*, 151 F.R.D. at p. 330.)

In *Susman, supra*, 561 F.2d 86, the named plaintiff was represented by his own firm as well as another attorney, Thomas Meites, a sole practitioner. The trial court ruled that the plaintiff could not be represented by his own firm for the reasons we have already discussed. (See pt. II.A., *ante*.) The court also concluded that Meites could not serve as class counsel because he had collaborated with plaintiff's firm on various legal matters and rented office space in the same suite as plaintiff's firm. The trial court found that, although there was no "legal" relationship between Meites and plaintiff's firm, Meites was not sufficiently independent of plaintiff's firm to act as class counsel.

 On appeal, the Seventh Circuit Court of Appeals agreed, stating: "[T]hat an individual rents office space from a law firm does not by itself render a member of that firm or a relative of a member of that firm an inadequate class representative. On the contrary, a court must examine the circumstances of each case. The [trial] court's ruling which was based on the *interdependence* between Mr. Meites and [plaintiff's] law firm . . . cannot be said to be an abuse of discretion." (*Susman, supra*, 561 F.2d at p. 95, italics added.)

Similarly, the interests of Cagney and the Sigel firm reach beyond this case to the 13 other actions in which Westrup Klick and the Sigel firm serve or served as cocounsel; six are still active. Because Cagney, as an attorney at Westrup Klick, may benefit from attorney fees recovered in the other litigation, he is not sufficiently independent to serve as the class representative in this one. Here, in light of the financial relationship and interdependence between Cagney and the Sigel firm, Cagney may acquiesce in, rather

than monitor, the firm's decisions, and the firm may benefit from the situation by seeking to maximize its recovery of attorney fees.

■ Finally, we address Cagney's contention that California law accords class counsel an absolute right to serve as the class representative. For support, Cagney relies on *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732] (*Daar*). There, the plaintiff, in propria persona, filed a class action against the defendant, seeking to recover damages based on alleged overcharges for taxicab services. The court said nothing about whether the plaintiff was an attorney or whether he might be entitled to attorney fees. Quite the opposite, the court stated: "It is not contended either that there is a conflict of interest between plaintiff and the other class members, or that plaintiff is not a member of the represented class, but only that the claims of the class members are separate and distinct. . . . [¶] . . . [¶] . . . [R]ather than articulating any specific test, we have always maintained that ' "a determination of whether a particular plaintiff can fairly protect the rights of the group he purports to represent is necessarily dependent upon the facts and circumstances of each case." ' " (*Id.* at pp. 707, fn. 10, 710.) We fail to see how *Daar* supports Cagney's contention. ■ "An opinion is not authority for a point not raised, considered, or resolved therein." (*Styne v. Stevens* (2001) 26 Cal.4th 42, 57 [109 Cal.Rptr.2d 14, 26 P.3d 343].)

In *Saxer v. Philip Morris, Inc.* (1975) 54 Cal.App.3d 7 [126 Cal.Rptr. 327] (*Saxer*), the plaintiff in a class action was an attorney, appearing in propria persona. Rather cryptically, the court stated in a footnote: "Defendants contend that Saxer should not be allowed to act as both class representative and as one of the attorneys for the class. This contention lacks merit inasmuch as the court in *Daar*[, *supra*,] 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732][] implicitly sanctioned such dual representation." (*Saxer, supra,* 54 Cal.App.3d at p. 18, fn. 1.) This footnote is the sum total of *Saxer*'s analysis—if it can be called that—on the conflict of interest issue. And, as stated, *Daar* says nothing about the propriety of an attorney serving as class counsel and the class representative.

■ In applying *Saxer*, courts have limited its blanket approval of dual representation. In *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442 [131 Cal.Rptr. 482] (*McGhee*), the court stated: " 'Dual representation' of a class by attorneys who become or are in fact the representatives of the class has been held fatal by federal courts to the existence of a class action due to conflict of interest . . . . But in California such dual representation [is] *subject to the discretionary authority of the court to prevent overreaching* . . . ." (*Id.* at p. 451, citing *Saxer, supra,* 54 Cal.App.3d at p. 18, fn. 1, italics added.)

In *Reich v. Club Universe* (1981) 125 Cal.App.3d 965 [178 Cal.Rptr. 473] (*Reich*), the court cited both *Saxer* and *McGhee*, reiterating that "dual representation is subject to the *discretionary authority of the court*." (*Reich, supra,* 125 Cal.App.3d at p. 971, italics added, citing *Saxer, supra,* 54 Cal.App.3d at p. 18, fn. 1, and *McGhee, supra,* 60 Cal.App.3d at p. 451.)

In sum, the trial court must exercise its discretion in deciding whether there is a conflict of interest between the class representative and class counsel, on one hand, and the putative class, on the other hand. As stated at the beginning of our discussion (see pt. II, *ante*), "[w]e review a trial court's ruling on a disqualification motion for abuse of discretion, and . . . the trial court's discretion is limited by the applicable legal principles." (*Brand v. 20th Century Ins. Co./21st Century Ins. Co., supra,* 124 Cal.App.4th at p. 601.) We conclude, consistent with *McGhee*'s and *Reich*'s application of *Saxer*, that the trial court abused its discretionary authority in this case because an insurmountable conflict of interest exists between the *attorneys* for the putative class (including plaintiff) and the *putative class* itself.

As explained by an authority on class actions: "Most courts have refused to allow attorneys to assume simultaneously the roles of named plaintiff and class counsel, finding that counsel's interest in the litigation's generation of fees presents an insurmountable conflict of interest. Certification in cases in which attorneys attempt to take on dual positions is usually denied on the basis of inadequate representation, since the potential exists, according to some courts, for compromise of the interests of absent class members in exchange for the attorney's disproportionate personal benefit. For example, class counsel may recommend settlement on terms less favorable to class members 'because a large fee is part of the bargain.' . . .

"Because attorney's fees are almost always larger than an individual class member's share of recovery, a few courts have expressed concern with the possible abuse of the class action device by lawyers who bring suits which result in 'minuscule recoveries' by their 'intended beneficiaries' while the class attorneys 'have reaped a golden harvest of fees.' " (5 Newberg on Class Actions (4th ed. 2002) § 15:22, pp. 79–82, fns. omitted.)

"Courts have disagreed on the propriety of an attorney who is a plaintiff in a class action who also seeks to serve as attorney for the class. This disagreement has carried over in various look-alike situations. Most courts have held that such a dual role is 'inherently fraught with potential conflicts of interest.' Courts have extended this dual-role rejection to similar situations so that an attorney cannot be a class plaintiff if the class is

represented by his or her law firm, and in *Jaroslawicz v. Safety Kleen Corp.*, [*supra*, 151 F.R.D. 324], class certification was denied on adequacy of representation grounds in a securities suit when the class plaintiff had served as co-counsel with class counsel in at least 42 other cases, including 25 currently pending cases and therefore the relationship amounted to a de facto partnership . . . .

■ "It is also improper for an attorney to represent a class when the named plaintiff is the attorney's spouse or child." (1 Newberg on Class Action, *supra*, § 3:40 pp. 522–523, fns. omitted.)

■ "In cases where the defendant has challenged the representative capacity of a lawyer-plaintiff, those denying class certification are clearly in the majority." (1 Newberg on Class Actions, *supra*, § 3:40, p. 528.)[9]

■ Another leading treatise has stated: "[C]ourts generally refuse to permit the named plaintiff to employ as counsel for the class a law partner or associate; or a spouse; or member of the family. The concern is that any attorney fees paid would diminish the class recovery and thus pose an irreconcilable conflict of interest." (Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶ 4:157.27, pp. 4-56.5 to 4-56.6.)

■ In closing, we note that "[a] trial court acts properly when it refuses to certify class actions [or grants motions to disqualify class counsel where] the named plaintiff is simply ' "lending his name to a suit controlled entirely by the class attorney." ' " (*Howard Gunty Profit Sharing Plan v. Superior Court, supra,* 88 Cal.App.4th at pp. 579–580.)

We therefore conclude that the trial court should have granted Apple's disqualification motion in its entirety. On remand, the trial court shall grant the motion, precluding Westrup Klick and the Sigel firm from representing Cagney, as the class representative, and the putative class.

## III

## DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent court to (1) vacate its order denying Apple Computer, Inc.'s motion to disqualify

---

[9] Newberg criticizes the majority view. (See 1 Newberg on Class Actions, *supra*, § 3:40, pp. 524–528; 5 Newberg on Class Actions, *supra*, § 15:22, p. 82.) That criticism does not persuade us to adopt the minority view.

Westrup Klick LLP and the Law Offices of Allan A. Sigel and (2) enter a new order granting the motion. The parties are to bear their own costs in connection with this proceeding.

Spencer, P. J., and Suzukawa, J.,[*] concurred.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.