Filed 4/1/14  Brown v. Mortensen CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT BROWN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STEWART MORTENSEN, <br><br> Defendant and Respondent. | B243846 <br><br> (Los Angeles County <br> Super. Ct. No. BC289546) |

APPEAL from an order of the Superior Court of Los Angeles County.  William F. Highberger, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Law Offices of Lyle F. Middleton, Lyle F. Middleton; Law Offices of Robert A. Brown and Robert A. Brown for Plaintiffs and Appellants.

Carlson & Messer, Charles R. Messer, David J. Kaminski and Stephen A. Watkins for Defendant and Respondent.

_____

Plaintiffs Robert A. Brown (Brown) and his two daughters, Kirsten and Kayla Brown, brought a putative class action against Stewart Mortensen for allegedly disclosing plaintiffs' and class members' confidential medical information to third parties in violation of the Confidentiality of Medical Information Act (Confidentiality Act) (Civ. Code, § 56 et seq.). After nine years of sporadic law and motion practice that included no significant discovery but did involve a four-year appellate sojourn, the trial court on its own motion, issued an order to show cause why the action should not be preemptively "decertified," i.e., deemed unsuitable for class treatment, because plaintiffs' attorneys, Brown and Lyle F. Middleton, were unsuitable counsel for the proposed class and the Browns were inadequate proposed class representatives. After notice, two rounds of briefing, and a hearing, the court issued an order in which it "decertified" the action.

On appeal, plaintiffs contend the trial court: (1) lacked jurisdiction to foreclose class treatment absent a motion by the defense and before any class discovery had been conducted; (2) erred in concluding Brown and Middleton were unsuitable proposed class counsel; (3) erred in concluding plaintiffs would be inadequate class representatives; (4) failed to afford plaintiffs an opportunity to replace class counsel or find substitute class representatives; and (5) abused its discretion by striking class allegations without notice to the class.

We conclude that a trial court supervising a putative class action may proactively identify, consider and resolve class certification and management issues at the earliest suitable moment independent of any certification or decertification motion. We also conclude the court here properly disqualified Robert Brown—so long as he or his family members remained as class representatives. But the court also properly concluded the Browns were inadequate class representatives. Once this determination was made, no reason remained to disqualify Brown as class counsel, and no basis existed for disqualifying Middleton in any event. We therefore reverse the court's order and remand for further proceedings.

2

## Background

We tentatively take the facts from the fourth amended complaint, recognizing that although the case is 11 years old, no significant discovery has occurred and little or no evidence as yet supports the vital allegations. Plaintiff Robert A. Brown and his two daughters, minors at the time, were dental patients of Dr. Rolf Reinholds, who was originally a defendant in this action but has since been dismissed. In July 2000, Dr. Reinholds billed Brown $600 for a permanent dental crown that Brown never received or agreed to pay for. Brown declined to pay the bill.

Dr. Reinholds referred the debt to a collection agency, Credit Bureau Services, the fictitious business name for Mortensen. Mortensen or his agents contacted Brown and attempted to collect the debt. When Brown requested that Mortensen provide proof of the debt, Mortensen sent Brown a copy of Brown's dental chart, as well as the charts of his daughters. In response, Brown informed Mortensen he owed no money to Dr. Reinholds and complained the dental charts contained his and his daughters' confidential medical information.

Over the next two years, Mortensen repeatedly disclosed Brown's and his children's Social Security numbers, dates of birth, addresses, telephone numbers, and entire dental history with Dr. Reinholds, including their dental charts and alleged dental treatments, to the three major national consumer reporting agencies, Experian, Equifax, and TransUnion. Mortensen made these disclosures to verify to the consumer reporting agencies that a debt was owed, despite the facts that Brown had not authorized the disclosure of his family's medical information and no one contended money was owed for dentistry performed on his children.

From 2001 to 2003, Brown repeatedly demanded that Mortensen cease making unauthorized disclosures and contacted the three consumer reporting agencies to inform them the disclosures were inaccurate and incomplete. In response, the agencies requested that Mortensen provide additional information. Mortensen then disclosed Brown's dental history dating back 10 years, despite the fact this history included detailed information

3

about Brown's dental treatments and was irrelevant to the dispute over whether Brown owed anything for a permanent dental crown.

Brown contacted Dr. Reinholds in January 2003 and requested that he instruct the three consumer reporting agencies to delete the disclosures of medical information. Dr. Reinholds declined to do so, and instead ratified Mortensen's disclosures and himself made further unauthorized disclosures to Equifax.

In 2003, Brown and his wife, individually and as guardians ad litem for their minor children, sued Dr. Reinholds, Mortensen and others, alleging, among other things, violations of the Confidentiality Act, inter alia. Only the claims against Mortensen for violation of the Confidentiality Act are at issue; all other claims and parties have been voluntarily dismissed.[1]

In the third and fourth causes of action of the fourth amended complaint, which is operative, Brown and his daughters allege Mortensen's disclosure of their medical information to consumer reporting agencies violated the Confidentiality Act, which prohibits the unauthorized dissemination of individually identifiable medical information and provides for compensatory damages and other remedies. (Civ. Code, §§ 56.10, 56.26, 56.35.)

The case was deemed complex and assigned to Judge Anthony J. Mohr, of the Complex Litigation Division of Los Angeles Superior Court. Through 2004, 2005, and 2006 the trial court sustained demurrers to plaintiffs' original and amended complaints. On March 26, 2006, the court sustained Mortensen's demurrer to the fourth amended complaint with leave to amend and then, when Brown elected not to amend, dismissed the action. Plaintiffs appealed from the judgment of dismissal, contending Mortensen's demurrer to the fourth amended complaint was erroneously sustained.

---

[1] Plaintiffs apparently sued the credit reporting agencies first. The litigation settled in 2003, with the agencies deleting plaintiffs' confidential information from their files.

We affirmed, holding that the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) preempted plaintiffs' claims against Mortensen. (*Brown v. Mortensen* (2010) 181 Cal.App.4th 789, review granted Apr. 14, 2010.) The California Supreme Court reversed, holding the Fair Credit Reporting Act did not preempt the claims. (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1072.) The case was then reassigned within the complex litigation division to Judge William F. Highberger.

**Class Discovery**

Plaintiffs sought class discovery beginning in November 2003, when they requested the names and contact information of all health care providers who engaged Mortensen as a debt collector and all alleged patients/debtors who were reported by Mortensen to credit reporting agencies. The trial court ordered the discovery to be produced, but not until the parties stipulated to a suitable protective order. Rather than stipulate to such an order, Mortensen objected to class discovery on the ground that the information sought was confidential, requested a stay of discovery, and applied for an order preventing disclosure of the confidential information of third parties. The court apparently never ruled on defendant's motion to preclude class discovery, but granted a temporary discovery stay on December 5, 2003. The stay was not lifted until more than three years later, on April 9, 2007. No discovery was conducted even then, as shortly thereafter plaintiffs voluntarily dismissed the action in order to appeal the court's final demurrer ruling.

The appellate process took five years, with plaintiffs ultimately succeeding. In February 2012, after remand from the Supreme Court, plaintiffs again requested discovery of Mortensen's collection files. They represented that Mortensen had testified in deposition in another case that he disclosed patient identifying information of a "high" percentage of his estimated collection accounts to credit reporting agencies without having obtained patient authorization for the disclosures. Plaintiffs represented they sought statutory damages of $1,000 per patient whose medical records were disclosed by Mortensen without authorization. They estimated the class could number as high as 4

million, but discovery was needed to determine the actual class size.[2] The case is being defended by Mortensen's insurer, which represented to the trial court that the relevant policy limit was $250,000, of which $220,000 had already been spent in litigation and in bankruptcy proceedings instituted by Mortensen.[3] The insurer issued a letter in March 2012 indicating that once the remaining $30,000 was exhausted it would cease defending the action. Plaintiffs dispute that the policy limit was $250,000.

Plaintiffs again sought the names and addresses of the subject patients and all medical collection files from 2000 through 2004, information that was stored on a computer server now owned by a third party. Counsel for Mortensen's insurer estimated it would cost $15,000 to retrieve the information, which was stored under a Unix operating system. Mortensen objected to the discovery on the ground that disclosing the information to plaintiffs would violate patient confidentiality.

Before determining whether and under what circumstances patient information would be turned over to plaintiffs, the court sua sponte raised a concern that Brown, as class counsel, was not qualified also to be a class representative. Brown represented that after the class was certified he would step down as counsel for the class, leaving that position exclusively to Middleton. The trial court asked if Brown would agree to waive

---

[2] Plaintiffs' numbers were unsupported by competent evidence and are likely specious. Plaintiffs inferred the numbers from an unauthenticated transcript of a 2002 deposition in which Mortensen testified he had $200 million in outstanding accounts. Asked about the value of the accounts, Mortensen testified: "*Sometimes* they'll average only $50, $60 each." (Italics added.) Disregarding the "sometimes," plaintiffs divided $200 million in accounts by $50 per account to come up with an estimated 4 million potential class members. Plaintiffs then inferred that because Mortensen's accounts were transferred to a medical billing and collection company, "all, or virtually all, of the 4 million accounts are patients of health care providers," a "large" percentage of whom were likely victims of Mortensen's wrongful disclosure practices. Plaintiffs then multiplied 4 million class members by $1,000 in statutory damages per violation to reach a case value estimated at potentially $4 billion.

[3] We grant Mortensen's request for judicial notice of a bankruptcy court order and deny plaintiffs' motion to augment the record.

6

any attorney fees for his work on the case hitherto, and Brown represented he would not. The court then set an Order to Show Cause re Decertification and invited the parties to submit briefing and evidence on the issue.

In opposition to decertification, plaintiffs represented they had offered to pay for conversion of Mortensen's computer files and to retain a retired judge (Hon. Peter Lichtman) to retain custody of the confidential information discovery produced. Plaintiffs argued they were proper representatives and Brown and Middleton proper class counsel, but if the court determined they were not, they should be afforded an opportunity to find other counsel and/or class representatives.

After two rounds of briefing and further oral argument, the trial court issued an "order decertifying" the class. In the order, the court found that Brown could not serve as class counsel so long as either he or his daughters purported to be class representatives, as to do so would subvert the supervisory role a class representative must play in the litigation. The court also found Middleton unsuitable to be class counsel, because the class representatives "obviously have no separateness or emotional distance from the two lawyers in [the] case since Mr. Brown at all times has been one of those lawyers." The court found "it would be no sufficient solution at this late point in time to simply purge Mr. Brown and keep Mr. Middleton," because "[t]he plaintiffs, be they Mr. Brown himself or his two daughters, would indisputably continue to have the close relationship to attorney Middleton evidenced by the past co-counsel relationship."

The Browns filed a timely appeal.

## DISCUSSION

### A.    The trial court had jurisdiction to adjudicate class issues

Plaintiffs first argue the trial court lacked jurisdiction to preemptively determine the litigation was unsuitable for class treatment. We disagree.

No authority precludes a trial court from determining early and on its own motion that a case is unsuitable for class treatment. On the contrary, our Supreme Court has directed courts to determine whether litigation may be maintained as a class action "'[a]s

7

soon as practicable after the commencement,'" of the action, and to be procedurally innovative when doing so. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 453, quoting Fed. Rules of Civ. Proc., rule 23(c)(1).) "[T]the important interests of fairness and efficiency sometimes may be served better when class causes of action are screened for legal sufficiency before the matter of certification is decided." (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 440.) For example, "nothing prevents a court from weeding out legally meritless suits prior to certification via a defendant's demurrer or pretrial motion. In fact, it is settled that courts are authorized to do so." (*Ibid*.) The decision whether to permit a matter to proceed as a class action "rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion." (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.)

Here, the only matter before the trial court at the time it made its ruling was plaintiffs' request for class discovery. No other discovery was proposed and no motions were pending. It was therefore incumbent upon the court as part of its discovery determination to identify and address any obstacles that might preclude class treatment of the litigation as a matter of law. If those obstacles proved insuperable, no reason exists why the court should not bar class treatment at the outset. (*Linder v. Thrifty Oil Co*., *supra*, 23 Cal.4th at p. 440, fn. 7 [approving merits determination prior to a certification decision where to do so avoids unneeded class discovery and notification expenses].)

Plaintiffs repeatedly argue the court had no power to make decisions affecting the class until a class was certified. For example, they argue they were improperly denied class discovery and a fair opportunity to obtain evidentiary support for a certification motion. They also argue that an attorney cannot be disqualified as class attorney absent certification of a class, and a plaintiff cannot be deemed an inadequate class representative before a motion to certify. The arguments are without merit. When class discovery is the only extant issue, the time has come to determine whether the litigation may at least potentially continue as a class action. Here, the court properly recognized it

8

was time to make that threshold determination, and after it was made, to proceed accordingly.

**B.    The court properly disqualified Brown as class counsel—so long as plaintiffs are the class representatives**

Plaintiffs argue the court erred in disqualifying Brown and Middleton as class counsel.  We agree as to Middleton but disagree as to Brown.  But Brown is disqualified only so long as plaintiffs remain the class representatives.

Disqualification of counsel "imposes heavy burdens on both the clients and courts: clients are deprived of their chosen counsel, litigation costs inevitably increase and delays inevitably occur."  (*City of Santa Barbara v. Superior Court* (2004) 122 Cal.App.4th 17, 23; see *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil Change*).)  The decision whether to disqualify must be considered carefully "to ensure that literalism does not deny the parties substantial justice."  (*SpeeDee Oil Change*, at p. 1144.)  "Nevertheless, determining whether a conflict of interest requires disqualification involves more than just the interests of the parties.  [¶]  A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'  [Citations.]"  (*Id*. at p. 1145.)  Disqualification of counsel is sometimes necessary "to protect the integrity of our judicial process by enforcing counsel's duties of confidentiality and loyalty."  (*City of Santa Barbara v. Superior Court*, *supra*, at p. 23.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  [Citations.]  If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.  [Citations.]  When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion.  [Citation.]  However, the trial court's

9

discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil Change*, *supra*, 20 Cal.4th at pp. 1143-1144; *Sharp v. Next Entertainment Inc*. (2008) 163 Cal.App.4th 410, 425 [decision whether to disqualify an attorney is reviewed for abuse of discretion].)

A potential conflict of interest arises when an attorney managing class litigation also serves as the class representative or is closely related to the representative, because in the class action setting attorneys fees generally largely outweigh the recovery by individual class members. ""'In any class action there is always the temptation for the attorney for the class to recommend settlement on terms less favorable to his clients because a large fee is part of the bargain."'" [Citation.] For this reason the majority of courts have found, for example, that it is impermissible to have a class representative too closely associated with the class attorney. [Citations.] It has also been recognized that once an agreement to settle is reached, the interests of class counsel and a defendant are no longer necessarily adverse. [Citation.]" (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 555.) This is so because upon settlement, "a defendant is interested only in disposing of the total claim asserted against it, . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." (*Prandini v. National Tea Co*. (3d Cir. 1977) 557 F.2d 1015, 1020.) This divergence in interest creates the danger that "the lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." (*Weinberger v. Great Northern Nekoosa Corp*. (1st Cir. Me. 1991) 925 F.2d 518, 524.)

For this reason, "'[m]ost courts have refused to allow attorneys to assume simultaneously the roles of named plaintiff and class counsel, finding that counsel's interest in the litigation's generation of fees presents an insurmountable conflict of interest. Certification in cases in which attorneys attempt to take on dual positions is

10

usually denied on the basis of inadequate representation, since the potential exists, according to some courts, for compromise of the interests of absent class members in exchange for the attorney's disproportionate personal benefit. For example, class counsel may recommend settlement on terms less favorable to class members "because a large fee is part of the bargain." . . . [¶] 'Because attorney's fees are almost always larger than an individual class member's share of recovery, a few courts have expressed concern with the possible abuse of the class action device by lawyers who bring suits which result in "minuscule recoveries" by their "intended beneficiaries" while the class attorneys "have reaped a golden harvest of fees."'" (*Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1278 (*Apple Computer*), quoting 5 Newberg on Class Actions (4th ed. 2002) § 15:22, pp. 79-82, fns. omitted.) Furthermore, it is generally "'improper for an attorney to represent a class when the named plaintiff is the attorney's spouse or child.'" (*Id*. at p. 1279 (quoting 1 Newberg on Class Actions, *supra*, § 3:40, pp. 522-523, fns. omitted); *Susman v. Lincoln American Corp*. (7th Cir. 1977) 561 F.2d 86, 90-91.)

In *Apple Computer*, an attorney was the sole named plaintiff in a class action brought under Business and Professions Code section 17200 (the unfair competition law; UCL). The attorney's law firm and another firm represented the class. We held that the plaintiff's law firm must be disqualified because its interest in the litigation—to maximize litigation fees—conflicted with the plaintiff's interest to maximize recovery for the class. We noted that the attorney fees would almost certainly dwarf the $8 that individual members of the class could obtain, and there was a concern that the litigation was manufactured solely to produce attorney fees. (*Apple Computer*, *supra*, 126 Cal.App.4th at pp. 1264-1274.)

Here, Brown's interests are likewise in conflict. As class counsel his personal interest is to maximize attorney fees. As either a named class representative or the father of representatives, his interest is to maximize class recovery. This arrangement strips the class of a necessary level of supervision and provides none of the safeguards of adequate representation discussed in *Apple Computer*. Disqualification of Brown as the class's

11

attorney removes this conflict, preserves the integrity of the class litigation process, and imposes no heavy burden on the class, which, being as yet uncertified, has not been deprived of its chosen counsel. Disqualification also imposes no burden on plaintiffs, as Brown continues to represent them.

Plaintiffs argue the concerns raised in *Apple Computer* do not apply here because Brown would not be entitled to statutory attorney fees should either he, in pro. per., or his daughters, for whom he was guardian ad litem, prevail.[4] The distinction is imaginary. The point of *Apple Computer* and the cases discussed therein was that an attorney's interest *in settlement* conflicts with that of the class. Whether the attorney would be entitled by statute to attorney fees after ultimately prevailing on the merits is irrelevant. The two cases upon which plaintiffs rely, *Trope v. Katz* (1995) 11 Cal.4th 274, 292 and *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 494, do not compel a different result, as each concerned attorney fees awardable by statute to a prevailing party, not fees negotiated in a settlement agreement. (See *Trope v. Katz*, *supra*, at p. 292 [attorney who litigates in pro. per. cannot recover reasonable attorney's fees under Civ. Code, § 1717 as a prevailing party]; *Taheri Law Group v. Evans*, *supra*, at p. 494 [party who litigates an anti-SLAPP motion on his own behalf may not recover attorney fees as a prevailing party under Code of Civ. Proc., § 425.16].) In settlement, the class's interests conflict with the attorney's interests. Supervision over the settlement process by the class representative is therefore essential to protect class interests. When the attorney is also the representative, or is closely related to the representative, independent supervision is lacking. It is for that reason a class action attorney may not be the representative or a close relative of the representative.

## C.     The trial court improperly disqualified Middleton as class counsel

None of the above discussion regarding Brown's adequacy as class counsel applies to Middleton. It is true that in *Apple Computer* we affirmed disqualification not

---

[4] Brown acknowledges he is no longer his daughters' guardian ad litem.

12

only of the named representative's law firm but also its cocounsel. But that was because the plaintiff's firm, Westrup Klick LLP, and cocounsel, the Law Offices of Allan A. Sigel, concurrently served as cocounsel on 11 other class actions filed jointly by the attorneys, the majority of which had as named plaintiffs either Westrup Klick attorneys or their relatives. (*Apple Computer*, *supra*, 126 Cal.App.4th at p. 1262.) We concluded the financial arrangements between the class representative's law firm and its cocounsel rendered them interdependent, such that one would benefit from attorney fees recovered by the other. (*Id*. at p. 1276.) This created an insuperable conflict of interest that prevented not only the representative's law firm, but its cocounsel and de facto partner in litigation from continuing the litigation.

Here, the trial court identified no evidence of such a conflict between Middleton and the class, and the record reveals none. The court's only remarks as to Middleton were that plaintiffs "obviously have no separateness or emotional distance from the two lawyers in [the] case since Mr. Brown at all times has been one of those lawyers," and plaintiffs had a "close relationship to attorney Middleton evidenced by the past co-counsel relationship." But plaintiffs represented that Middleton was not Brown's partner and did not share office space with him, and was not related to any of the plaintiffs. It is therefore unclear if or why the court felt there could be no "emotional distance" between him and plaintiffs. At any rate, a close working relationship between two attorneys on one case, even one that lasts 11 years and counting, is no ground to disqualify both attorneys simply because one must be disqualified.

**D.    The trial court properly disqualified plaintiffs as class representatives**

Plaintiffs' only argument on appeal concerning their adequacy as class representatives consists of one sentence: "It was not possible for the court to find that any named plaintiff in this case was an inadequate class representative, since appellant had not yet brought any motion to certify a class or appointed a class representative." As discussed above, the argument is without merit. If the only remaining issue at trial is whether class discovery should proceed, but it appears from available facts that a plaintiff

cannot represent the class, no reason exists to permit the litigation to proceed as a class action.

"Class certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Fireside Bank v. Superior Court*, *supra*, 40 Cal.4th at p. 1089.) "The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." (*Ibid*.)

The party seeking class certification must prove he or she "will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b)(4).) Here, the trial court reasonably concluded plaintiffs cannot be deemed adequate protectors of class interest because of their competing interest in protecting Brown's potential right to attorney fees. After 11 years of litigation Brown's interest in any attorney fees ultimately resulting from the action is vested and substantial. This interest is in direct conflict with his and his daughters' interests as class representatives and will continue to be in conflict until the close of the litigation, whether or not he continues as the class's attorney.

E.     **The trial court improperly decertified the class**

As seen, the trial court properly concluded Brown could not serve as class counsel so long as he or his daughters were the class representatives. It also concluded, again properly, that Brown and his daughters could not adequately serve as class

14

representatives whether or not Brown continued as class counsel, because their interests would forever conflict with his vested right to attorney fees for work performed over the last 11 years.

But where "named representatives are no longer adequate representatives of the class . . . the proper procedure would not be to decertify the class but grant leave to amend to redefine the class or add a new class representative." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 328; see *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 ["courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest"]; *Californians for Disability Rights v. Mervyn's LLC* (2008) 165 Cal.App.4th 571, 601 [a plaintiff who loses standing "is entitled to an opportunity to amend its complaint to substitute a new plaintiff with standing"]; *Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 136 ["In general, courts liberally allow amendments for the purpose of permitting plaintiffs who lack or have lost standing to substitute as plaintiffs the true real parties in interest"].)

Here, once the court disqualified plaintiffs as class representatives the reason to disqualify Brown as class counsel disappeared. The solution therefore was not to disqualify both plaintiffs as representatives and Brown as counsel, but to disqualify only plaintiffs and then afford them an opportunity to find new class representatives. "[A]n original plaintiff who lacks standing *in a class action* should be allowed to file a motion for, and potentially obtain, precertification discovery of the identities of actual class members (i.e., potential plaintiffs with standing who may elect to serve as substitute class representative plaintiffs)." (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 290; see also *Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 834 [leave to conduct precertification discovery and amend to name new class representative proper where class members would likely "be denied relief if precertification discovery were not allowed and the class action were dismissed"].)

15

The trial court refused to permit plaintiffs to conduct precertification discovery to find new class representatives because in its words, if they could do so, "then any attorney who wanted to bring a class action could name himself or herself or a family member and then leverage off such a filing to get court assistance to find a proper class representative." To be sure, if a trial court determines an attorney has abused the court's processes by filing a patently improper class action for the sole purpose of using precertification class discovery to fish for representatives, it may deny discovery and force the attorney to proceed with the case as filed. But nothing in the record suggests plaintiffs followed such a course here. Plaintiffs filed this lawsuit three years before *Apple Computer,* the seminal California case establishing that a class attorney's family could not serve as class representatives, was decided. Before *Apple Computer*, it was not unknown for a class attorney's family to represent the class from the inception of litigation to its end.

Defendant argues plaintiffs have already had an opportunity to find alternative class representatives, but made a conscious decision not to do so and refused to amend their fourth amended complaint after the trial court sustained defendant's demurrer. The argument is unsupported in the record. Plaintiffs sought class discovery at the outset of the litigation, but defendants persuaded the trial court to effect what ultimately became a years-long discovery stay that was lifted only after remand from the Supreme Court. To this day, plaintiffs' request for class discovery has never been considered on its merits. We express no opinion on how discovery should proceed, other than to say plaintiffs should be afforded a fair opportunity to seek out new class representatives should they choose to do so.

Given our conclusion that the class action was improperly dismissed, we need not reach plaintiffs' argument that dismissal may not be made without notice to the proposed class.

## DISPOSITION

The trial court's order is affirmed insofar as it deems plaintiffs to be unsuitable class representatives. The order is reversed insofar as it disqualifies class counsel and precludes discovery and amendment of the complaint to name new class representatives. The matter is remanded for further proceedings consistent with these rulings. Both sides are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, J.

We concur:


ROTHSCHILD, Acting P. J.


MILLER, J.*

---

*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.