Filed 6/10/26

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS OF HUMANITY, LLC, | D085849 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00006337-CU-NP-CTL) |
| JOHN DONBOLI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Wendy M. Behan, Judge. Affirmed.

Ross, Peter W. Ross and Charles Avrith, for Plaintiff and Appellant.

Pettit Kohn Ingrassia Lutz & Dolin, Douglas A. Pettit, Alexis C. Garcia and Annie F. Fraser, for Defendants and Respondents.

---

\* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part B. of the Discussion.

John Donboli and JL Sean Slattery, attorneys at Del Mar Law Group LLP, filed a putative class action lawsuit in federal court against Citizens of Humanity, LLC, alleging that consumers were misled by the "Made in the U.S.A." labels on Citizens-brand jeans.  The named plaintiff was initially Louise Clark, but Coni Hass later substituted as plaintiff after Clark withdrew.  Both named plaintiffs alleged they had purchased Citizens jeans in reliance on labels that stated "Made in the U.S.A."  They claimed that because the jeans were made with imported fabrics and other components, the "Made in the U.S.A." labels violated former Business and Professions Code[1] section 17533.7.

Indeed, at the time the lawsuit was filed, it was a violation of former section 17533.7 to sell merchandise labelled with "the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."  (*Ibid*.)  But in 2016, while the underlying lawsuit was pending, the Legislature amended the statute to permit "Made in America" branding for some products that use minimal foreign components.  (§ 17533.7, subds. (b) & (c), as amended by Stats. 2015, ch. 238, § 1.)  Citizens filed a successful motion to dismiss based in large part on this amendment.  Hass elected not to amend the complaint, and the district court dismissed the action.

Citizens then filed this malicious prosecution action against five defendants—Hass and Clark (the named plaintiffs or plaintiffs); attorneys Donboli and Slattery; and their law firm, the Del Mar Law Group (Law

---

[1]    Undesignated statutory references are to the Business and Professions Code.

Group).  At the parties' request, the trial court considered evidence and made both factual and legal determinations as to whether Citizens had established that defendants lacked probable cause for the underlying action.  The trial court ruled Citizens had not established this element of its claim and entered judgment in favor of defendants.

On appeal, Citizens argues the trial court erred because, as a matter of law, Clark was an inadequate plaintiff.  It claims that Clark is Slattery's sister-in-law, and under *Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253 (*Apple*), a relative of class counsel cannot be the representative plaintiff.  We disagree with Citizens's reading of *Apple* and, in any event, do not think a conflict of interest between the representative plaintiff and the class necessarily establishes that a plaintiff's claim lacked probable cause.  In the unpublished portion of our opinion, we reject several additional arguments by Citizens that the trial court prejudicially erred in certain of its evidentiary rulings.

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Underlying Litigation*

In June 2014, Law Group filed a putative class action lawsuit against Citizens in federal court, alleging the company labeled its jeans "Made in the U.S.A." in violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the unfair competition law (UCL) (§ 17200), and the "Made in U.S.A." law.  (§ 17533.7.)  Clark, the named plaintiff, alleged she bought a pair of "Boyfriend"-style Citizens jeans that were labeled "Made in the U.S.A." even though component parts were manufactured outside the United States.

3

Citizens filed a motion to dismiss, arguing that section 17533.7 was preempted by conflicting federal labelling requirements. The district court denied that motion, finding it was possible to comply with both state and federal law.

Citizens learned during discovery that Clark is the sister-in-law of Slattery, one of the lead attorneys handling the case. Citizens thereafter moved to disqualify Law Group. While that motion was pending, Clark filed a motion to withdraw and substitute Hass as the named plaintiff. The district court granted the latter motion and found that the substitution "vitiate[d]" Citizens's disqualification motion. According to the court, Citizens had "failed to demonstrate that [Clark] or her counsel … acted in bad faith" in requesting the substitution.

Law Group filed a second amended complaint substituting Hass as the named plaintiff. Hass alleged she bought a pair of Citizens "Ingrid"-style jeans from Nordstrom in or around November 2013, in reliance on a "Made in the U.S.A." label. Like Clark, Hass asserted causes of action for false labeling under section 17533.7, a violation of the UCL, and a violation of the CLRA.

While Hass's lawsuit was pending, the Legislature amended section 17533.7. (See Stats. 2015, ch. 238, § 1, eff. Jan. 1, 2016.) The statute continued to prohibit selling merchandise labeled "Made in U.S.A." if it "has been entirely or substantially made, manufactured, or produced outside the United States." (Compare former § 17533.7 with current § 17533.7, subd. (a).) But under the new version of the statute, merchandise may also be labeled "Made in U.S.A." if: (1) foreign-sourced materials "constitute not more than 5 percent of the final wholesale value of the manufactured product"; or (2) foreign-sourced materials could not be domestically sourced

4

and such materials "constitute not more than 10 percent of the final wholesale value of the manufactured product." (§ 17533.7, subds. (b) & (c)(1)(B).)

Citizens filed a motion to dismiss Hass's second amended complaint for failure to state a claim under the amended statute. The district court granted the motion to dismiss with leave to amend. Hass filed a notice of intent not to amend the complaint, and the district court dismissed the case accordingly.

## B. *The Malicious Prosecution Litigation*

### 1. *The Anti-SLAPP Motion and First Appeal*

In February 2018, Citizens filed this malicious prosecution action. Law Group moved to strike the complaint under the anti-SLAPP statute. (See Code Civ. Proc., § 425.16.) The trial court denied the motion, and this court affirmed. (*Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589 (*Citizens*).)

As relevant for purposes of this appeal, we found "two conflicting narratives, both supported by evidence, regarding the origin of the federal mislabeling case." (*Citizens, supra,* 46 Cal.App.5th at p. 602.) One possible narrative was "that Clark was a shill plaintiff, and [her attorneys] were aware of this fact." (*Id.* at p. 601.) Evidence supporting this interpretation included that: (1) Clark is Slattery's sister-in-law and had been a plaintiff in other Law Group lawsuits; (2) Clark left the tags on her Citizens jeans after purchase; (3) she "did not regularly look to see where the jeans were made before she purchased them"; (4) "she owned 'a lot' of shoes but could only think of one pair that was made in the United States"; (5) "she does not look at the labels before she makes purchases"; and (6) Clark may have

5

withdrawn from the lawsuit "to avoid further scrutiny as to why she purchased the Citizens jeans." (*Id.* at pp. 601, 602.)

With respect to Hass, our opinion focused on whether the defendants knew "that Hass purchased Ingrid-style jeans with a label that said 'Made in the U.S.A.' and components of those jeans came from a foreign country in violation of California and/or federal law." (*Citizens, supra*, 46 Cal.App.5th at p. 605.) We found "[o]n the record before us" at that time, it was "unclear whether [they] had the requisite knowledge." (*Ibid.*) We noted "there [was] no indication in the record that … anyone … at … [Law Group] knew if the Ingrid-style jeans were made with foreign components." (*Id.* at p. 605.) Further, Hass's jeans had not been produced as an exhibit, and the record was unclear as to whether her jeans label read "Made in the U.S.A." or instead indicated the jeans were made with imported fabrics. (*Id.* at p. 606.)[2]

2. *Post-Remand Proceedings*

After we remanded, Hass died and Citizens dismissed the case against her estate. The matter proceeded to trial, and a jury was sworn. After counsel gave opening statements, Citizens presented testimony from the company's founder, Jerome Dahan.

The parties then asked the court to "review certain exhibits, [and] deposition testimony from Clark and Hass" and "agreed to have the [c]ourt make a determination … on probable cause, waiving the right for the jury to make any determinations on facts relating to the probable cause

---

[2]     In later proceedings, defendants produced the jeans Hass claimed to have purchased in 2013, and photographs reflect the label on these jeans stated, "Made in the U.S.A." Citizens further acknowledged the fabric and other components of Ingrid jeans manufactured between November 1, 2011, and February 3, 2017, came from Japan and China.

determination for the [c]ourt." In connection with this determination, the trial court made a number of evidentiary rulings. The rulings relevant to this appeal are discussed below.

After accepting evidence and hearing argument, the trial court ruled in favor of defendants, concluding Citizens had not established that defendants lacked probable cause for the underlying litigation. The court said it did not think there was any question that, at the time of the lawsuit and the second amended complaint, "the Made in the USA labeling that Citizens of Humanity [used] was violating the law," so "[c]ertainly, there is probable cause to believe they were violating the California law." The court observed that Dahan had testified "his labels would have been wrong at that time" if products using foreign components parts "couldn't use the Made in the USA label like he was doing."

The court further noted the "motion to dismiss the class action was not granted until after the California law was amended in 2016" and the district court determined the amendment "was retroactive, which would not have been a guarantee." It observed that, although defendants chose not to amend the complaint to try to meet the standard of the new law, "maybe they would have proceeded if they had the information that came out in discovery in this case." In the trial court's view, "the case history of the federal case" did not provide a basis to believe that defendants lacked probable cause to pursue claims against Citizens.

The court next considered evidence that Clark was an inadequate class representative, finding there "was actually zero evidence" that Clark "was sent out by the attorneys to buy the jeans." It credited Clark's statement that "she splurged on something that she normally would not splurge on and she bought them based on the Made in the USA label." The

7

court also believed Clark's testimony that she had noticed an interior label stating that the jeans were made of imported fabrics "before cutting off the tags" and then "contacted an attorney she knows who happened to be her brother-in-law." The court thus found, "[b]ased on her sworn testimony," "[s]he was misled by the Made in the USA label" and "she had probable cause to pursue the case." Furthermore, the court disagreed with Citizens's claim that *Apple, supra*, 126 Cal.App.4th 1253, "prohibits a relative to be serving as a class representative," adding it did not "believe that has anything to do with probable cause."

Finally, as to Hass, the court noted she had "connected with the law firm through a class action website," but found "[t]hat fact on its own does not have any bearing on probable cause." The court credited Hass's testimony "that she bought the jeans," and "she always reads her labels and it was important to her." The court found Hass "also had probable cause to join in the case as a class representative and remain in it."

Based on the court's finding of probable cause, it dismissed the case and entered judgment in favor of the defendants.

## DISCUSSION

On appeal, Citizens first claims the trial court erred as a matter of law in finding that Clark's claim was supported by probable cause. According to Citizens, the decision in *Apple, supra*, 126 Cal.App.4th 1253 holds that a relative of class attorneys may not serve as the class representative.

Citizens next claims the trial court erroneously excluded certain evidence. It asserts that, taken together, the court's exclusion of this evidence was prejudicial.

8

## A.     *Clark's Adequacy as a Matter of Law*

Citizens argues that, as a matter of law, defendants "did not have probable cause to assert Clark's claims" because Clark was an improper plaintiff.  Citizen relies almost exclusively on an observation in *Apple, supra*, 126 Cal.App.4th 1253, that " '[the] majority of courts … have refused to permit class attorneys, their relatives, or business associates from acting as the class representative.' " (*Id.* at p. 1264, quoting *Susman v. Lincoln American Corp.* (7th Cir. 1977) 561 F.2d 86, 90–91.)  According to Citizens, because Clark was Slattery's sister-in-law, "as a matter of law, the [Law Group] Attorneys could not be class counsel with [Clark] as the class representative."  We disagree with this broad assertion.

In *Apple*, the court considered whether to disqualify two firms representing the named plaintiff in a class action.  The plaintiff worked as an attorney for one of the firms, and the other firm had served as cocounsel with plaintiff's firm in 13 other matters.  (*Apple, supra,* 126 Cal.App.4th at pp. 1261, 1273, 1276.)  While the analysis discusses cases involving relatives, the propriety of relatives serving as class representatives was not directly at issue.  Rather, the plaintiff in *Apple* stood to gain monetarily from his firm's recovery of attorney fees, and the court found a close "financial relationship and interdependence between" the plaintiff and the associated firm.  (*Id.* at pp. 1273, 1276.)  Citizens presents no information about any "financial relationship" between Slattery and Clark, and we do not think it reasonable to presume "interdependence" solely based on their relationship as siblings-in-law.

More importantly, perhaps, *Apple* does not so obviously control the circumstances presented here that no reasonable attorney could disagree. (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776 ["A claim is

9

unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit' " ' "]; *Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 804 [claim lacks probable cause if "no reasonable attorney would have thought it tenable"].) Taken at face value, the relevant passage in *Apple* merely quotes from a federal court's observation as to how a "majority of courts" at a particular point in time had addressed the issue of an attorney's relatives serving as a class plaintiff. Other courts have resolved the issue differently. (See Newberg & Rubenstein on Class Actions (2025) § 3:70 [a preexisting relationship between the class representative and class counsel "is not inevitably disabling"]; *id.*, § 3:77 ["Courts … have split over whether to disqualify class counsel when the class representative is the attorney's family member"].) At best, the *Apple* statement is dictum that cannot bind every reasonable attorney on threat of a malicious prosecution judgment.

But even if there were clear and uncontested authority for the proposition that an attorney cannot represent his sister-in-law as the named plaintiff in a class action lawsuit, we are not convinced this would support Citizens's malicious prosecution claim. Citizens argues "no reasonable attorney would have brought suit under these circumstances," and thus Law Group "lacked probable cause" to pursue the claim. But whether Law Group could permissibly represent Clark in the underlying litigation does not affect whether defendants had probable cause to bring the claim. Assuming the conflict was disqualifying, Clark could have pursued the claim with different counsel or Law Group could have proceeded with a different representative plaintiff, which is what the district court authorized here after Clark decided to withdraw. (See generally *Lazar v. Hertz Corp.* (1983) 143 Cal.App.3d 128, 142.) In neither event would the conflict be fatal to the action against

10

Citizens.  We therefore agree with the trial court's conclusion that *Apple* is not determinative of the probable cause analysis here.

## B.   *Evidentiary Rulings*

Citizens argues the trial court erred by excluding a variety of evidence proffered at the probable cause proceeding.  "We review a trial court's rulings on the admissibility of evidence for abuse of discretion."  (*Pilliod v. Monsanto Company* (2021) 67 Cal.App.5th 591, 630.)  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' "  (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1203.)  "[T]o obtain a reversal based on the erroneous exclusion of evidence, [an appellant] must show that a different result was probable if the evidence had been admitted."  (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1223, citing Evid. Code, § 354; *People v. Earp* (1989) 20 Cal.4th 826, 880].)

### 1.   *Federal Regulations*

Citizens sought to introduce a 2014 publication from the Federal Trade Commission (FTC) stating:  "**Country of origin**.  The Rules require labels to disclose the country where the product was processed or manufactured.  The FTC amended [16 C.F.R.] sections 303.33(d) and (f) and 300.25(d) and (f) to clarify that the country where an imported product is processed or manufactured is the country of origin as determined under the laws and regulations enforced by Customs."  The trial court excluded this publication, finding it was not relevant to the probable cause assessment.  Citizens claims it shows that "for those companies following the FTC regulations, Section

17533.7 was a trap. It was a 'gotcha!' which enterprising class-action attorneys, such as the [defendants], could exploit … ."[3]

We see no abuse of discretion in the trial court's determination. Citizens points to no evidence indicating defendants were aware of this publication or had otherwise identified the purported inconsistency between federal and state law prior to filing the lawsuit. Moreover, this fact would bear on the *subjective* intent of the defendants, not the *objective* probable cause analysis. (See *Citizens, supra*, 46 Cal.App.5th at pp. 598–599 [elements of malicious prosecution include whether there is "objective probable cause" and whether "the claim was pursued by the defendant with subjective malice"].) These are separate elements of the malicious prosecution claim, and the trial court was only considering the latter.

But even if Citizens could establish an abuse of discretion, it has not established prejudice. The court admitted an order from the underlying litigation in which the district court ruled that federal law did not conflict with section 17533.7. In that order, the district court held that federal law permitted, but did not require manufacturers to use a "Made in the U.S.A." label, and thus "manufacturers can comply with both [state and federal] laws by either only using the 'Made in the U.S.A.' label on items entirely made in

---

3      Without supporting citation, Citizens also claims the trial court excluded "evidence that, if a company actually used thread, zippers, or buttons, manufactured outside the United States, then California Section 17533.7 absolutely prohibited the use of the words, 'Made in the U.S.A.'." An appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "We are not required to search the record to ascertain whether it contains support for [Citizens's] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.) We therefore decline to consider this issue.

12

this country, or by using a distinct label for clothing sold in California." The trial court noted this order in its ruling and acknowledged that state law "was more restrictive than the federal law in the Made in the USA labeling." We thus see no reasonable probability of a different result if the trial court had admitted the FTC publication.

2.     *Donboli's Statement in the Press*

Citizens claims the trial court erred by excluding a statement from attorney Donboli in a July 18, 2014, news article that " 'his firm has "ongoing investigations looking into multiple blue-jeans companies." ' " Citizens claims the trial court erred by excluding this statement as hearsay because it is a statement by a party opponent. Citizens has not preserved this argument for appeal.

The trial court held that this article, along with a tranche of other articles relied on by Citizens, constituted inadmissible hearsay. In response to the court's ruling, Citizens's counsel stated, "my argument is that they're evidence of malice and they should be admitted in the case in general." The trial court replied, "I'm not talking about whether they're admitted in the case down the road, I'm just talking for today, purposes of this [probable cause] hearing … with the Court." Counsel responded, "Okay."

We cannot reverse a judgment "by reason of the erroneous exclusion of evidence unless … it appears of record that … [t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means." (Evid. Code, § 354, subd. (a).) Citizens specifically argued to the trial court that this evidence was relevant to *malice*, not that it was relevant to the probable cause analysis. Accordingly, Citizens "has forfeited any claim that it was improperly excluded for that purpose." (*People v. Panah* (2005) 35 Cal.4th

13

395, 481 [defendant forfeited argument that evidence showed third party culpability when he had only argued to the trial court it demonstrated an inadequate police investigation].)

3.     *Clark's Prior Participation in Law Group Lawsuits*

Citizens argues the trial court improperly excluded evidence that Clark was the representative plaintiff in three prior Law Group class actions. The trial court excluded evidence about these and other lawsuits, finding it would "open a door to mini trials on each of those other cases."

Citizens argues the trial court erred because the bare fact that Clark was a representative plaintiff in prior Law Group lawsuits is relevant without regard to any other information about the cases. As an initial matter, we note Citizens sought to rely on testimony beyond the basic facts of the cases, including details about one of the lawsuits, a more general question about Clark's relationship with her brother-in-law's firm, and discussion of how much Clark recovered from each lawsuit. Citizens fails to argue the trial court's analysis was flawed with respect to these aspects of the evidence, which go well beyond the basic details of the lawsuits.

As to the basic facts, we cannot find the trial court's determination constituted an abuse of discretion. This court previously noted that Clark's relationship with Slattery and participation as a representative plaintiff in prior Law Group actions was relevant, although we highlighted "these facts alone would not support a reasonable inference that Clark was a shill."

(*Citizens, supra*, 46 Cal.App.5th at p. 601.)[4] Nonetheless, under Evidence Code section 352, a "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will … necessitate undue consumption of time." The trial court's stated concern was that Citizens's evidence would "open a door to mini trials," which we understand to mean it would "necessitate undue consumption of time." (*Ibid.*) The court's concern appears well founded. If Citizens were to present evidence of Clark's prior lawsuits to suggest she was a habitual "shill" plaintiff for Law Group, defendants would no doubt want to offer evidence to rebut that implication. Such evidence could well lead Citizens to introduce further evidence to bolster its position. We understand why the trial judge was worried this endeavor might devolve into "mini trials" on all three cases, requiring significant trial time.

Again, we have already determined that these facts alone were not sufficient to establish Citizens's prima facie case on the probable cause element, thus indicating this evidence is not highly probative. We therefore conclude the court did not abuse its discretion by determining that the risk of undue consumption of time substantially outweighed the relevance of the evidence. (Cf. *People v. Hamilton* (2009) 45 Cal.4th 863, 929–930 (*Hamilton*)

---

[4]    To the extent Citizens contends that this court's prior comments on relevance should be controlling of the trial court's evidentiary rulings, we do not agree. (*Citizens, supra*, 46 Cal.App.5th at p. 598 [a court assessing anti-SLAPP motion may consider "potentially admissible" evidence].) That the evidence is *relevant* does not make it automatically *admissible* under Evidence Code section 352. Indeed, the whole purpose of the statute is to "allow[] the court to exclude relevant evidence if it is unduly prejudicial, time consuming, or confusing." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1176 (conc. & dis. opn. of Corrigan, J.).)

[trial court did not abuse its discretion by excluding evidence that "would have required 'a mini-trial' " on collateral issue].)

4. *Other Law Group Lawsuits*

Citizens also argues evidence regarding a number of other Law Group class actions was relevant to the probable cause analysis and was wrongly excluded by the trial court. These include: (1) a 2014 action alleging misleading labelling by a jeans manufacturer, brought by David Paz as representative plaintiff; (2) a 2007 action alleging misleading labelling by a plastic cup manufacturer, also brought by Paz as representative plaintiff; (3) two actions filed 2015 and 2016, alleging misleading labelling by clothing manufacturers, brought by Jeff Card as representative plaintiff; (4) a 2010 action alleging misleading labelling by a bicycle manufacturer, also brought by Card; (5) a 2014 action alleging misleading labelling by a jeans manufacturer, brought by Sonia Hofmann as representative plaintiff; (6) a 2014 action alleging misleading labelling by a children's toy manufacturer, brought by Eric Hofmann as representative plaintiff; and (7) a 2014 action alleging misleading labelling by a vodka manufacturer, brought by Gary Hofmann as representative plaintiff.

As with Clark's prior lawsuits, the trial court concluded there was a risk of undue consumption of time due to the possibility of "mini trials." Citizens claims that "[m]ini trials would not be necessary. The principal inquiries would be: Who did you sue? When? For what? Who was the plaintiff? And what was your relationship to the plaintiff?" It argues this evidence would show that Law Group "filed at least five 'Made in the U.S.A.' class action lawsuits against five different jeans companies … and in each case, the plaintiff was a relative or associate" who "had purchased his or her jeans in the five-month period between February to June[] 2014." Citizens

16

contends, "The probability that each of these associates of [Law Group] was actually deceived by 'Made in the U.S.A.' labeling on jeans they had purchased over this short period of time is minimal," and "[t]he more reasonable inference is that [Law Group] discovered an opportunity to make money by filing class action lawsuits against jeans manufacturers and sent out their go-to plaintiffs, including Clark, to buy the jeans and act as the lead plaintiffs."

Again, we review these rulings for abuse of the trial court's broad discretion, and we cannot say the court abused its discretion by concluding that the probative value of this evidence was substantially outweighed by the risk that it would lead to undue consumption of time. We agree that the bare facts of these lawsuits could suggest improper, coordinated activity and is therefore relevant. But this supports, rather than undermines the trial court's concern about opening the door to mini trials. It would be unfair to defendants to allow Citizens to offer summary evidence about these cases while precluding defendants from offering evidence to rebut unfavorable inferences. A reasonable trial judge could conclude that introducing evidence about eight other lawsuits involving five different plaintiffs and a variety of different products would consume an inordinate amount of time. (See *Hamilton, supra*, 45 Cal.4th at pp. 929–930.)

Further, we do not agree that this information is "highly probative of [the] claim that Clark was acting as a shill." To the extent the timing of the jeans purchases by these separate plaintiffs suggests coordination, it does so only weakly. The plaintiffs include two former clients, a possible relative of

17

Slattery's business associates,[5] and Slattery's sister-in-law. It does not seem so improbable that four people from Slattery's personal and professional network might buy jeans—or in Card's case jeans and a tee shirt—in a five-month period. As many people find attorneys through their business, social, and family networks, Slattery's connection to the plaintiffs is not especially suspicious.

Citizens also argues "[t]he other lawsuits demonstrate [defendants'] methodology" or "a pattern" in a manner that bears on Clark's lawsuit. Citizens appears to mean that the plaintiffs in these other cases were shills, thus demonstrating that Clark was also a shill. Generally, evidence of "specific instances of … conduct[] is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) But assuming the evidence is even admissible for this purpose, Citizens has not provided evidence that the other plaintiffs were shills. The fact that all these plaintiffs had some prior relationship with Slattery or Law Group does not itself support a reasonable inference that their cases lacked merit. (See *Citizens, supra*, 46 Cal.App.5th at p. 601.)

In sum, we think the trial court could reasonably conclude that the evidence of other lawsuits was not sufficiently probative to warrant the significant time it would likely consume. Accordingly, we find the trial court did not abuse its discretion in excluding this evidence.

---

[5] Citizens claims Sonia Hofmann must be the relative of Gary and Eric Hofmann, who apparently share a business interest with Slattery. But Citizens presents no evidence that Sonia is related to Gary and Eric, aside from their shared last name.

18

5.      *Clark's Testimony Regarding Shoes*

Citizens contends the trial court erroneously excluded the following testimony:

> "[Q:]  How many pairs of shoes do you own?
>
> "[A:]  Umm? A lot.
>
> "[Q:]  Can you think of one that was made in the U.S.?
>
> "[A:]  Umm. My, uh, my tennis shoes.  [¶] … [¶]"
>
> "[Q:]  Why don't all your -- why don't you buy only shoes that are made in the U.S.?
>
> "[A:]  Why don't I buy only shoes that are made in the U.S. Umm.  Well, I don't really know of any."

Citizens argues this testimony shows Clark "could think of only one pair [of shoes] that was made in the United States," claiming this shows she "does not regularly buy products 'Made In The U.S.A.'."

Whether or not the trial court abused its discretion by excluding this evidence, Citizens cannot establish resulting prejudice.  The court admitted testimony that "almost all" of Clark's jeans were not made in the United States and that she does not regularly look at labels to see where products are made.  In its ruling, the trial court credited Clark's testimony that "she splurged on something that she normally would not splurge on and she bought [the jeans] based on the Made in the USA label."  The court thus appears to have accepted that Clark did not regularly look at labels or buy jeans made in the United States, but nonetheless believed her testimony that she chose this pair of jeans based on their stated origin.  We see no reasonable likelihood that admitting Clark's testimony regarding her shoes would have led to a different result.

19

6. *Hass's Deposition Testimony*

Citizens argues the trial court refused to admit evidence that "the attorneys solicited Hass to be the lead plaintiff."[6] It points to excluded testimony that Hass submitted her information to a class action website hoping to find an attorney to represent her regarding purportedly mislabeled cypress oil, and did not remember mentioning Citizens in her submission to the website. The court also excluded Hass's testimony that she was unaware some of Citizens's jeans were not entirely made in the United States until she spoke to a Law Group employee. Citizens argues this evidence shows Hass did not know "anything about where Citizens jeans were manufactured" and thus that she did not have "probable cause to sue Citizens."

We need not address whether this testimony was erroneously excluded,[7] as we again find Citizens cannot show prejudice. The trial court overruled objections to substantially similar testimony from Hass that she did not do anything to investigate where Citizens's jeans were made "other than what [her] attorneys told [her]." The trial court thus implicitly considered that Hass learned about the derivation of her jeans from her attorneys. In addition, the trial court found that Hass "connected with the

---

[6] Some of the testimony Citizens contends was wrongly excluded concerns Hass's role as a plaintiff in other lawsuits. Citizens fails to explain how this testimony is relevant to the probable cause analysis and has thus forfeited such arguments. (See, e.g., *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 728, fn. 4 [an appellant forfeits arguments not briefed on appeal].)

[7] In the trial court, defendants objected on the grounds of relevance, attorney client privilege, and Evidence Code section 352. The trial court did not specify which objection it was sustaining, and Citizens only addresses relevance in its appellate briefing.

20

law firm through a class action website," but concluded "[t]hat fact on its own does not have any bearing on probable cause." Because the trial court's ruling took into consideration that Law Group found Hass through a website and that the firm informed her about the issue with her jeans, it is unclear how the information about Hass's cypress oil concern could have affected the court's analysis. We thus see no reasonable probability that the excluded testimony would have affected the outcome.

7. *Exhibits Regarding the Ingrid-Style Jeans*

Citizens points to two excluded exhibits concerning Hass's Ingrid-style jeans. It first identifies an apparent computer screen capture which, it claims, shows that Hass's "jeans were sold in 2003, not 2013." The trial court excluded this exhibit as irrelevant. We cannot find this was an abuse of discretion because it is unclear to us whether this exhibit (No. 66) supports Citizens's assertion:



Citizens does not point to any witness testimony or other information that would help to explain what this exhibit means. (See Evid. Code, § 403, subd. (a)(1) ["The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when … [t]he relevance of the proffered evidence depends on the existence of the preliminary fact"].) Without such context, we are unable to assume it shows that Hass's jeans were only made in 2003. Thus, Citizens has not demonstrated that the trial court erred by excluding this exhibit or that the exclusion resulted in prejudice.

Second, Citizens cites an exhibit which, it claims, shows "Nordstrom did not sell Ingrid jeans during November 2013." The trial court also concluded this evidence was irrelevant. The exhibit includes a handwritten ledger of some kind, some 2011 invoices from Citizens to Nordstrom, a typed ledger titled " '002' STYLES SHIPPED TO NORDSTROM W/ LAST SHIP DATE," and Nordstrom's sales and inventory reports from 2011 and 2012. As with the screen capture, this exhibit is difficult to understand without additional context, such as the meaning of codes and abbreviations, how and why the ledgers were created, and what information these documents capture. (See generally Evid. Code, § 403, subd. (a)(1); *People v. Babbitt* (1988) 45 Cal.3d 660, 686 [proponent of records has the burden of demonstrating their relevance].) We note the invoices and sales reports apparently do not address November 2013, when Hass claimed to have bought her jeans, and there is no indication when the ledgers were created.

But even assuming the exhibit is relevant, Citizens has not shown prejudice from its exclusion. As we noted in our prior opinion, "evidence that

22

Nordstrom did not sell the subject jeans during November 2013 does not necessarily call into question whether Hass actually purchased the jeans. Rather, it could simply indicate that Hass was mistaken about where she purchased the jeans some two years earlier." (*Citizens, supra*, 46 Cal.App.5th at p. 605.) The trial court's ruling echoed this analysis, stating, "I read her testimony and her testimony was that was the best of her recollection. And so … I don't find that to be impeaching that necessarily." Because the trial court found this evidence was not "impeaching," and we agree there was a rational basis for this conclusion, we do not see a reasonable probability of a different outcome if it had been admitted.

8. *The "Paper Plane" Hypothetical*

Finally, Citizens argues the court erred by excluding testimony concerning whether a paper plane folded by counsel was "made in the United States." Counsel for Citizens used this line of questioning in both Clark's deposition and Hass's, folding a piece of paper into a paper plane, then asking each witness whether the plane was made in the United States. Both witnesses answered "yes." Counsel then asked each witness whether their answer would change after finding out that the paper was made in Japan. Clark responded, "Yes." Hass demurred, but agreed it had been "constructed" or "made" in the United States. Citizens suggests this shows the plaintiffs were not actually deceived by the labels on their respective jeans because they thought that an item is "made" where it is assembled and not where its component parts are made.

The trial court found this was a "misleading demonstration in front of the witnesses" and excluded the testimony. Under Evidence Code section 352, a "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will … create

23

substantial danger … of confusing the issues, or of misleading the jury." Given that the court was ruling on probable cause without the jury's assistance, it is not clear that the trial court could exclude the evidence as "misleading."

Nonetheless, Citizens has not shown it was prejudiced by this exclusion. The trial court suggested this line of questioning was "misleading" to the witnesses, so clearly it did not find the excluded testimony helpful in its own understanding and interpretation of the evidence. We see no reasonable probability of a different result if the trial court had admitted this testimony.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

DATO, Acting P. J.

WE CONCUR:


DO, J.


CASTILLO, J.